William A. HODGSON, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.

No. 15180.

United States Court of Appeals Third Circuit.

Argued June 14, 1965.

Decided March 23, 1966.

Joseph E. Gallagher, Scranton, Pa., (O'Malley, Morgan, Bour & Gallagher, Scranton, Pa., on the brief), for appellant.

Jack H. Weiner, Civil Division, Appellate Section, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Bernard J. Brown, U. S. Atty., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN, STALEY and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

When this case was before us for the first time we specifically held that the Secretary through his Examiner " * * has determined the extent of the impairment suffered by Hodgson. It is clear that Hodgson at best has an impaired right-leg function because of which he retains only a 'residual usefulness' in that leg. That that residual usefulness is small indeed is apparent since he has suffered a major loss of the mobility of the knee. Moreover, the court below noted that Hodgson's personal physician described his arthritic condition as having grown progressively worse since the accident in 1955." Hodgson v. Celebrezze, 312 F.2d 260, 263 (3 Cir. 1963).

In that decision we reversed the Examiner's conclusion (which had been upheld by the District Court) that the physical impairment from which Hodgson had been determined to be suffering, does not result in inability to engage in substantial gainful activity. As to this, Chief Judge Biggs, speaking for the Court, said:

> "The only specific job suggested by the record in which Hodgson might obtain substantial gainful employment is that of an elevator operator. We find

nothing in the record to indicate that this possibility is a realistic one. Although it is disputed, there is substantial evidence to the effect that Hodgson is physically capable of performing a job which entails sitting and standing but little walking, such as operating an elevator. But assuming that Hodgson has the physical ability, where is he to find such employment? There has been no attempt to show that this occupation is one in which jobs are open to someone like Hodgson, with his physical limitations and his educational and vocational history. In the absence of such a showing we cannot sustain the denial of benefits to Hodgson. As was said in Klimaszewski [Klimaszewski v. Flemming, D. C., 176 F.Supp. 927] concerning the statutory language of Sections 216(i)(1) and 223(c) (2): 'The word "any" [substantial gainful activity] must be read in the light of what is reasonably possible, not of what is conceivable.' The possibility of this 55-year-old man obtaining employment as an elevator operator is not shown to be a reasonable one."

Summing up our finding, Chief Judge Biggs stated:

> "We conclude, therefore, first, that the Secretary has applied too strict a standard in this case. Not only must '[t]he capabilities of the individual * * * be viewed in context with his own physical, educational and vocational background', Sobel v. Flemming, 178 F.Supp. 891, 895 (E.D.Pa. 1959), but also the following question must be asked and resolved: '[W]hat employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available'. Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir., 1960). Second, when the record is tested by the principles set forth above, there fails to appear substantial evidence to support a finding necessary to the Secretary's determina-

tion of no disability, viz., that there existed a reasonable opportunity for Hodgson to engage in substantial gainful employment. Neither the bare suggestion in a medical report that the claimant might be able to operate an elevator nor the less specific allusions in the report to 'a sedentary job', 'some standing job' and 'one in which walking is at a minimum' constitute such evidence. See Pollak v. Ribicoff, 300 F.2d 674, 678 (2 Cir., 1962); Roberson v. Ribicoff, 299 F.2d 761, 762–763 (6 Cir., 1962). Compare Graham v. Ribicoff, 295 F.2d 391, 394–395 (9 Cir. 1961)."

We then remanded the proceeding with the direction to the District Court "to enter a judgment requiring the Secretary to determine whether Hodgson is able to engage in substantial gainful activity and is entitled to disability insurance benefits in the light of the principles enunciated in this opinion."

For reasons known only to itself the defendant failed to follow our mandate and proceeded to take additional medical and other evidence as to the claimant's physical impairment. That part of the Examiner's decision with reference to claimant's physical impairment comprises forty-six pages of the printed appendix. His conclusions are much the same as he found in the first appeal. The Appeals Council of defendant completely approved of what was practically a retrial of the impairment branch of the claim and endorsed the finding of the impairment to plaintiff's right leg again found by the Examiner. We note that if the defendant had been dissatisfied with any part of our ruling as to Mr. Hodgson's physical impairment, his remedy should have been to apply for certiorari and not, under the guise of necessity, to rehear the physical impairment branch of the case in dealing with the sole question on remand which had been stated precisely in our opinion. The defendant's Examiner in his present decision disagrees with our view of the record with respect to certain of the medical findings. Again, there was no petition for rehearing in that first appeal by defendant-appellee on that or any other element in the litigation. The strange sort of practice followed had no basis either in our opinion, the governing Act or otherwise.

■ Under our directive the one remaining task for appellee on remand was to ascertain what employment opportunities there are for a man who can do only what applicant had been found able to do and having in mind that mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. The question was not what sort of employment Mr. Hodgson could undertake. There was substantial, though disputed, evidence that he is physically capable of performing a job which entails sitting and standing, but little walking, such as operating an elevator. What had not been shown was that there was such type of work reasonably open to someone in appellant's predicament. We held that the Secretary on this point had " * * applied too strict a standard * * *." We returned the claim to the Secretary for him to apply the principles laid down in our opinion and to be guided by them in determining whether Mr. Hodgson is entitled to disability insurance benefits.

The defense attempted to introduce evidence of job availability for persons like Hodgson in and around Scranton, Pennsylvania, where Hodgson lives. The only testimony so offered was by a defense expert who named and relied upon a list of jobs from the "Dictionary of Occupational Titles" and the "Workers Trade Manual" which might be handled by applicant. It was categorically announced by this witness that he was talking primarily about the National Economy which as he remarked is "all I am responsible for". His testimony gave no real hope whatsoever of appellant being accepted for such employment within accessible distance of Scranton, his home. The witness said:

"In my honest opinion of this man— in view of his age and I'm thinking of the critical period and his disability

*and educational background—I wouldn't discard entirely the possibility of getting employment in some of these things that we have mentioned, but I would say that it would be extremely difficult."* (Emphasis supplied).

There was not even any assertion from the witness that the kind of occupation appellant might be able to take on was reasonably possible for him to obtain in his work area. In speaking about particular jobs the witness was asked if he meant "—on a national level?" He replied "On a national level—that's what I'm talking about." He named General Electric apparently with some sort of a plant in the Scranton section but he did not know much about the conditions there. He thought those employees were out on strike. "They are not working now—if they are—it's a skeleton force;" On a national level, the witness mentioned electric assembly jobs but nothing however regarding possibilities of that kind of position in the critical section. He talked about bench occupations in the baking industry with no indication of Scranton availability for the likes of Hodgson. He spoke vaguely about candy industry packers and separators; Aircraft Industry bench-assembly man. All of these were picked by him from the Dictionary of Occupational Titles and the Workers Trade Manual. The following questions and answers give vivid insight to the expert's actual views as to whether there is any reasonable possibility of Hodgson becoming employed in the Scranton territory.

"Q. First, on these jobs—are they common jobs in the industries mentioned?

A. *Are you speaking locally?*

Q. *Nationally.*

A. *Nationally they are—otherwise they wouldn't be in the DOT.*

Q. Before we ask you any more searching questions in this particular area are any of these jobs that you have run down in the books—that you mentioned—are any of these jobs available locally?

ATTORNEY: By available do you mean are there such jobs? Are men working at such jobs?

Q. Yes.

MR. DOHERTY: We have some possibilities locally. I mentioned the candy factory here and we do have, as far as that particular job, the box-closer. There are some industries which would fit in. *Chances of employment for this particular man are very slim possibly. For the ordinary man—there just aren't too many jobs around. I think on top of that he is also handicapped by his age and disability. I'm speaking of a local situation.*

\*　\*　\*　\*　\*　\*

Q. Do you have any personal knowledge as to whether Scranton is regarded as an area with substantial surplus of workers?

A. I can't give you figures, but I *think I have known this for a number of years—that it has had surplus working force here—and this has come out of the local employment agencies—the Pennsylvania State Employment Agency."* (Emphasis supplied).

Pressed by claimant's attorney as to whether he thought Mr. Hodgson would be able to obtain a job as a bakery laborer the expert answered, "I am thinking in general terms—I'm thinking industrial terms. This is a job that certainly exists in the American economy, right? Attorney: Yes. A. Can this man do this job? Attorney: That's not the question I'm asking you. A. *This is all I'm supposed to—all I'm responsible for—"* (Emphasis supplied).

After that the expert testified:

"If the job may not exist in this particular area, it may exist in another area or another area, or another area. Now, you can't say that outside of this area that he could go every place and get this job. He may not—"

Further on in his evidence the witness commented:

"If you're going to ask me if I know a specific place where the man with the specific similar disability as to the client, where he was placed, I think it's just—I would say, no, because I think it's an unfair question. *I am speaking of industry, generally.*"

(Emphasis supplied).

Finally there were these questions and answers:

"ATTORNEY: I think at one point you made a statement, and I didn't quite hear the answer when it was read back, it wasn't quite clear. *Did you make the observation that on the local basis job opportunities are scarce for even able-bodied individuals?*

A. *I say this from this point of view, that they are scarce because of the labor market, the large labor market that we have here.*

ATTORNEY: So that—I think you gave an example, or if it wasn't on the record—off the record discussion—you gave the example that an employer is going to hire—is going to fill a particular job—then when he has a choice between the able-bodied man and a person with a disability the employer would normally hire an able-bodied man?

A. Naturally, that's the tendency.

ATTORNEY: That would be true between 1955 and 1959 as well?

A. I would say, yes." (Emphasis supplied).

Our query to the Secretary was "[W]hat employment opportunities are there for a man who can do only what applicant can do?" Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir. 1960). The answer to this comes through very plainly from the above referred to testimony of the expert upon whom the Agency relied. Without any honest doubt there was, during the original critical period and down to and including the present, no reasonable possibility of Mr. Hodgson obtaining employment. As we above noted, in our previous opinion we said "But assuming that Hodgson has the physical ability, where is he to find such employment?" There has never been any contention in this case that Respondent should find a particular job for claimant in his community. Respondent should not have wasted time over that kind of argument. What does now firmly appear is that there is no practical possibility of employment for Hodgson in the Scranton vicinity, which is the territory to be considered as fairly within the range of his quest for work.

Little more need be said in this unfortunate case. The same Examiner, who heard the matter initially, from elaborate further evidence would have it that there are some minor changes for the better in claimant's condition. We are fully satisfied that claimant's said condition is essentially as it was before us on the first appeal and as is set out at length in our first opinion. Once more there is the suggestion that Hodgson exaggerates the degree of his residual pain and discomfort. That ignores in significant part Respondent's own further medical testimony at the second hearing. What we said in our first opinion as to the Examiner's thought regarding the pain element applies just as forcibly to his same type of conclusion after the second hearing. Hodgson v. Celebrezze, supra, 312 F.2d p. 262.

"There is evidence in the record that Hodgson suffers pain to a degree that requires him to take salicylates and other medication numerous times during the day. The Examiner minimizes the pain which Hodgson says he suffers by calling it 'subjective'. The Examiner has found that the claimant sees his doctor once a month."

The District Court in its present opinion on the appeal from the Respondent's second decision, correctly held that:

"The responsibility of the Secretary to establish the employment opportuni-

ties available to a claimant in his locale has been required by the cases decided in this Circuit."

■■ And it is the settled law in this Circuit that any substantial gainful activity means "of what is reasonably possible, not of what is conceivable." Farley v. Celebrezze, 315 F.2d 704, 708 (3 Cir. 1963). As in that decision, nothing in this record suggests any such reasonable possibility for Hodgson. In Stancavage v. Celebrezze, 323 F.2d 373, 378 (3 Cir. 1963) there was a factual picture completely comparable to the one before us. We there held:

> "The suggestion that there is a list of '221 jobs that can be performed by persons with minimal education and that are sedentary in character or require only light exertion' is not very meaningful. There must be something more tangible establishing what employment opportunities there are for a man with his impairment. The failure of the Secretary to establish the existence of that kind of genuine employment opportunity is patent. And it must be presumed that the best available proof on this has been presented. That proof is unacceptable under Hodgson."

Janek v. Celebrezze, 336 F.2d 828, 833 (3 Cir. 1964) again stresses that under the Act the true test is "reasonable possibility of employment" as opposed to theoretical employability based on some national level statistics. Klimaszewski v. Flemming, 176 F.Supp. 927, 932 (D.C. E.D.Pa.1959) a landmark decision in this field is to the same effect, as is Bujnovsky v. Celebrezze, 343 F.2d 868, 870 (3 Cir. 1965). Cases from other circuits affording towering support for this principle are Miracle v. Celebrezze, 351 F.2d 361 (6 Cir. 1965); Torres v. Celebrezze, 349 F.2d 342, 344 (1 Cir. 1965); Massey v. Celebrezze, 345 F.2d 146 (6 Cir. 1965); Ray v. Celebrezze, 340 F.2d 556, 559 (4 Cir. 1965); Celebrezze v. Warren, 339 F. 2d 833, 837 (10 Cir. 1964); Ratliff v. Celebrezze, 338 F.2d 978, 983 (6 Cir. 1964); Hanes v. Celebrezze, 337 F.2d 209, 215 (4 Cir. 1964); Thompson v. Celebrezze, 334 F.2d 412, 414 (6 Cir. 1964); Frith v. Celebrezze, 333 F.2d 557, 561 (2 Cir. 1964); Graham v. Ribicoff, 295 F.2d 391, 394 (9 Cir. 1961); Butler v. Flemming, 288 F.2d 591, 594 (5 Cir. 1961).

In light of the history of prior litigation on this claim, the District Court quite rightly in effect left the decision in the present appeal to this tribunal. As we have seen, there is no substantial evidence on the whole case, indeed no warrant in the record, to justify the decision of the Secretary on the sole question remanded to him by this Court for him to pass upon.

■■ The theoretical employability, etc. above referred to, in this instance has to do with the various occupations listed in the national economy which Mr. Hodgson could fit into if there was a reasonable possibility of a person in his circumstances obtaining that kind of position. Given Mr. Hodgson's age, disability, financial and family factors we were completely convinced on the first appeal that of necessity the reasonable possibility of work which he could undertake must exist in his home region. There was no use of speaking of employment for him somewhere out in the national labor market which he could not reach by ordinary local transportation from home. Reasonable possibility of Hodgson being hired meant and means just that, a realistic possibility. Some pie in the sky job not within a realistic distance of Scranton is not a reasonable possibility of a job for Hodgson. Therefore not only in the absence of proof of reasonable possibility of suitable work for Hodgson in the only place he is able to function but also on the uncontradicted, convincing evidence that there is no reasonable possibility of that work for him we hold that his physical impairment has resulted in inability to engage in gainful activity within the compass of the Act and that he is entitled to disability insurance benefits.

Hodgson has been deprived of those benefits far too long. When this case is

returned to the Secretary, solely for administrative findings of the amount of disability insurance benefits which appellant should be allowed, we are confident that these will be fairly and fully awarded.

The judgment of the District Court will be reversed with the direction that judgment for disability insurance benefits be entered in favor of appellant and against the Secretary. The District Court is further directed to remand the case to the Secretary for the sole purpose of fixing the amounts of disability insurance benefits to be awarded appellant and to so award them.