**William H. BAKER, Appellant,**

v.

**John W. GARDNER, Secretary of the United States Department of Health, Education and Welfare, Appellee.**

**No. 15586.**

United States Court of Appeals Third Circuit.

Argued March 29, 1966.

Decided July 5, 1966.

Before STALEY, Chief Judge, GANEY, Circuit Judge, and SHERIDAN, District Judge.

SHERIDAN, District Judge.

This is an appeal by William H. Baker, plaintiff-appellant, from an order of the district court denying his motion for summary judgment and granting a cross-motion for summary judgment of the Secretary of Health, Education and Welfare, defendant-appellee.

On February 5, 1963, plaintiff filed his application with the Bureau of Old-Age and Survivors Insurance, Social Security Administration, Department of Health, Education and Welfare, pursuant to Sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416 (i) and 423, for the establishment of a period of disability and for disability insurance benefits, alleging that he had been unable to work since June 29, 1962,[1] because of silicosis. The claim was denied by the Bureau of Old-Age and Survivors Insurance. Plaintiff then requested and received a hearing before an examiner who also denied the claim. The Appeals Council, Bureau of Hearings and Appeals, Social Security Administration, denied a request for review of the hearing examiner's decision. This decision, therefore, became a final decision of the Secretary, subject to review in the district court pursuant to Section 205(g) of the Act, 42 U.S.C.A. § 405(g). Hodgson v. Celebrezze, 3 Cir. 1963, 312 F.2d 260.

The evidence established the following facts: Plaintiff was almost 60 years old when his application was filed. He is now 62 years old. He completed the seventh grade and has no further education or training. At age 14, he went to work in a coal mine and eventually became a brakeman and then a motorman which required him to operate a locomotive used to pull coal cars from the mine. He worked as a motorman until 1959 when he became ill and was hospitalized

Kenneth J. Yablonski, Washington, Pa., for appellant.

Robert E. Tucker, Asst. U. S. Atty., Pittsburgh, Pa. (Gustave Diamond, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

---

1. At the hearing, the date was amended to March 6, 1963, to coincide with the date he was found to be totally disabled for Pennsylvania Workmen's Compensation purposes.

for about a month and a half at The Western Pennsylvania Hospital. His condition was diagnosed as "Pneumoconiosis (silicotic); pericarditis, probable tuberculous." After a home convalescence of nine months, on March 1, 1960, he returned to the mine and was given heavy outside work with a crew whose job it was to level and repair tracks and clean ditches. He missed one and sometimes two days every week because of his silicosis which caused him to be short-winded and light-headed. He testified that during this time his condition worsened and his fellow workers assumed some of the responsibilities to help him stay on the job.

Plaintiff was laid off in June 1962, when the mine closed. He started to collect unemployment compensation. The mine reopened in December 1962, but he refused to work on the orders of his doctor. Shortly thereafter, he stopped applying for unemployment compensation and applied for Workmen's Compensation benefits. He received a Pennsylvania Workmen's Compensation Board award for total and permanent disability, effective March 6, 1963.

In reports of February 8, 1963, and January 16, 1964, Dr. Connelly, who has been plaintiff's personal physician since 1956, diagnosed plaintiff's condition as far advanced pneumoconiosis with progressive massive fibrosis of the lungs, pulmonary emphysema (minimal in one report), and inactive pulmonary tuberculosis. He indicated that walking causes dyspnea, and that shortness of breath, cough, and associated discomfort cause him to be totally disabled from heavy work. He stated that episodes of nervousness over his condition since 1962 disabled him from light work. Dr. Connelly also found that plaintiff had degenerative arthritis of the spine, and arthritic pains in most joints which contribute to his disability. Electro-cardiographic findings indicated an underlying, though asymptomatic, arteriosclerotic heart disease.

Doctors Edward and Jerome Lebovitz, also plaintiff's physicians, reported in March, May and December 1963,[2] that plaintiff suffered from pneumoconiosis, anthracosilicosis, pulmonary fibrosis and pulmonary emphysema. In one report, pulmonary function studies are described as somewhat equivocal in that plaintiff had a good vital capacity but a reduced maximum breathing capacity. It also stated that x-rays show "extensive disease." Dr. Jerome Lebovitz limited plaintiff's activities to "sedentary external." Dr. Edward Lebovitz concluded that plaintiff is permanently and totally disabled and that his condition would prevent him from passing a preemployment examination.

Dr. Kleinschmidt, plaintiff's physician, reported in May 1963, on the results of a physical examination. He referred to a report of chest x-ray which is not included in the record, and concluded that an electrocardiogram showed no diagnostic abnormality. He also concluded that plaintiff is totally and permanently disabled by silicosis.

Opposed to this medical evidence was a report of a March 1963, examination by Dr. Hale, engaged by the State agency for disability determination.[3] He concluded:

"CHEST X-RAY: At West Penn Hospital, see report that is attached. My personal interpretation is that there is moderate evidence of diffuse nodular infiltrate in the upper ⅔rds of both lung fields, strongly suggestive of silicosis, but not excluding the diagnosis of co-existing tuberculosis. There appears to be also an increase in AP diameter suggestive of emphysema. Heart size was normal.

2. The record here is incomplete. The December 1963 report of Dr. Jerome Lebovitz, on a Social Security Administration form, indicates that certain information concerning plaintiff's respiratory condition is on the reverse side. The reverse side of the form, however, is not in the record. It cannot be determined whether this information was considered by the hearing examiner.

3. 42 U.S.C.A. § 421.

*Report on spirographic ventilation studies is attached.*

"SUMMARY: Vital capacity was 90% of normal. The MBC was 111% of normal, quite unexpected for the patient's clinical history. Timed vital capacity was slightly abnormal in that the 1 sec. was 53% and the 2 sec. was 86%, 3 sec. was 100% of normal. In general the studies indicate that ventilatory function is normal with some question as to if there is some obstructive disease.

"COMMENT: This patient has a history of being diagnosed and treated for active pulmonary tuberculosis during the past 13 years, apparently over two episodes of illness. Patient has been able to work in the mines in spite of his illness most of the time until work was not available and since that time feels much disabled. Physical examination reveals minimal evidence of incapacity and surprisingly the ventilatory studies [sic] degree of emphysema but certainly with a MBC of 111% it cannot be claimed to be a significant degree of impairment at this time. Obviously the patient does have a very definite infiltrated chest X-ray strongly suggestive of silicosis that would have to be interpreted as moderately advanced by X-rays findings alone. Again it would be a hazard for the patient to work in the mines or any other dusty trade with a history of active tuberculosis along with the X-ray findings of silicosis that are present. I am not impressed that the patient has a marked degree of impairment at this time and probably at most is mild with considerable pscho-logic overlay.

"FINAL DIAGNOSIS: (1) Silico-tuberculosis, moderately advanced, bilateral, apparently inactive at this time with X-ray evidence of some emphysema with minimal or no ventilatory impairment by spirographic determination. No coronary heart disease."

At the request of the State agency, Dr. Hale also examined and tested plaintiff in May 1963, for exercise tolerance.

" * * * The patient was able to complete this exercise without undue fatigue and was able to talk thruout the examination without any signs of significant dyspnea. There was no evidence of palor [sic], cyanosis or exhaustion. Vital signs at rest, after exercise and after 3 minutes of recovery are given as follows: p. 104–104–96, R. 16–18–16, B.P. 140/90—120/80—120/80. No cyanosis was evident on completion of exercise. I would interprete [sic] this study as showing no evidence of dyspnea at the casual level of walking for a period of six or more minutes."

The district court properly viewed the findings in the light of the two part test for disability, viz., (1) a determination of the extent of the physical or mental impairment, and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. Bujnovsky v. Celebrezze, 3 Cir. 1965, 343 F.2d 868. The court found there was substantial evidence [4] to support the hearing examiner's conclusion that plaintiff has a pulmonary disorder not resulting in a marked degree of impairment. The court approved the hearing examiner's reliance on the report of Dr. Hale to the exclusion of the reports of plaintiff's physicians. We cannot say this was error.

The district court did not comment on the arthritic, coronary and nervous conditions with which some of the medical evidence showed the plaintiff was afflicted, and which the hearing examiner considered. The hearing examiner found that these conditions were of "no consequence." We have examined the medical reports and have considered the hearing examiner's findings. The findings on the severity of these conditions, which we interpret to mean either no impair-

---

4. Section 205(g) of the Act, as amended, 42 U.S.C.A. § 405(g) provides in part that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * *"

ment or only slight impairment, are supported by substantial evidence.

 In applying the second part of the test, the district court held that plaintiff did not meet his burden because he did not offer evidence that there were no employment opportunities in the community for a man in his condition or that employers had refused to hire him because of his alleged impairment. This was error. A claimant is not required to go down a list of jobs and disprove his capacity for each of them or their availability to him as an actual opportunity for employment. Cochran v. Celebrezze, 4 Cir. 1963, 325 F.2d 137; Jarvis v. Ribicoff, 6 Cir. 1963, 312 F.2d 707. It is sufficient if a plaintiff offers evidence of an impairment, his work experience, his inability because of the impairment to do that work any longer, and his lack of particular experience for any other type of job. If there are other kinds of work available for which the plaintiff is suited, the Secretary must adduce some evidence from which a finding can be made that he can do some type of work, actually, and not apparently. Bujnovsky v. Celebrezze, supra, 343 F.2d at page 871; Torres v. Celebrezze, 1 Cir. 1965, 349 F.2d 342; Jarvis v. Ribicoff, supra; Thompson v. Celebrezze, 6 Cir. 1964, 334 F.2d 412. In the absence of such a showing by the Secretary, a determination contrary to the plaintiff is not supported by substantial evidence. Butler v. Flemming, 5 Cir. 1961, 288 F. 2d 591, 595; Kerner v. Flemming, 2 Cir. 1960, 283 F.2d 916, 921–922. The hearing examiner found that plaintiff "can no longer work in the mines because of the exposure to dust and that he would probably have been unable to return to the mines during the period at issue." Presumably, this included a finding that plaintiff could not return to the heavy laboring job outside the mines, since the hearing examiner limited consideration of employment opportunities for plaintiff to light and sedentary type work. The

Secretary did not agree, however, that plaintiff had shown his lack of particular experience for any other type work because of his long experience as a motorman which the Secretary concluded provided him with skills that were easily adaptable to other industries. It is not incumbent on a plaintiff to prove that a skill acquired and applied in a certain way in one industry cannot be applied in the same or similar way in another industry. He is not required to show that he lacks capacity for employment opportunity in many jobs in many industries. Cochran v. Celebrezze, supra. The Secretary's reliance on Dupkunis v. Celebrezze, 3 Cir. 1963, 323 F.2d 380, is misplaced. In Dupkunis the claimant, after leaving the mining industry because of silicosis, actually obtained and adequately performed a job with Bethlehem Steel Company until he was laid off. He could not perform his former work as a coal miner, but he did not show he could not perform his former work with Bethlehem Steel Company.

 The plaintiff showed that his impairment prevented him from performing his former work and his lack of particular experience for any other type job. The hearing examiner relied on Dr. Hale's findings. He interpreted them to mean that plaintiff could perform work of a light or sedentary nature,[5] and listed 12 light or sedentary jobs, such as Door Tender, Bundler and Baser, which he believed plaintiff could perform. The hearing examiner stated that these jobs existed in the economy in general and in plaintiff's area of residence. These findings were based on the hearing examiner's reference to the Dictionary of Occupational Titles, Volumes I and II, and the Estimates of Workers Trait Requirements for 4,000 Jobs, published by the United States Department of Labor, and the United States Census of Population, 1960, Pennsylvania. They do not supply substantial evidence to overcome the plaintiff's case. The key questions to be

5. Dr. Hale stated that plaintiff should not work in the mines or at other dusty trades, but ventured no opinion as to the type of physical activity for which plaintiff was suited.

answered are stated in Hodgson v. Celebrezze, 3 Cir. 1963, 312 F.2d 260, and restated in the second Hodgson case, 3 Cir. 1966, 357 F.2d 750:

" * * * Although it is disputed, there is substantial evidence to the effect that Hodgson is physically capable of performing a job which entails sitting and standing but little walking, such as operating an elevator. But assuming that Hodgson has the physical ability, where is he to find such employment? There has been no attempt to show that this occupation is one in which jobs are open to someone like Hodgson, with his physical limitations and his educational and vocational history. * * *

* * * * * *

"We conclude, therefore, first, that the Secretary has applied too strict a standard in this case. Not only must '[t]he capabilities of the individual * * * be viewed in context with his own physical, educational and vocational background', * * * but also the following question must be asked and resolved: '[W]hat employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available'. * * * Second, when the record is tested by the principles set forth above, there fails to appear substantial evidence to support a finding necessary to the Secretary's determination of no disability, viz., that there existed a reasonable opportunity for Hodgson to engage in substantial gainful employment. Neither the bare suggestion in a medical report that the claimant might be able to operate an elevator nor the less specific allusions in the reports to 'a sedentary job,' 'some standing job' and 'one in which walking is at a minimum' constitute such evidence."

Farley v. Celebrezze, 3 Cir. 1963, 315 F. 2d 704; Stancavage v. Celebrezze, 3 Cir. 1963, 323 F.2d 373; Janek v. Celebrezze, 3 Cir. 1964, 336 F.2d 828. In this connection, in Thomas v. Celebrezze, 4 Cir. 1964, 331 F.2d 541, the court said:

"Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant."

The court in Stancavage v. Celebrezze, supra, rejected as substantial evidence the same industrial studies cited by the hearing examiner:

"We recognize that the use of governmental and industrial studies such as the one referred to by the Appeals Council in the present case has been permitted without objection on occasion and approved of as warranting the Secretary's determination of what employment opportunities are available to a claimant. Having in mind the sincere, practical administration of the Act, however, we are not persuaded that such evidence moves far enough away from the realm of conjecture and theory when applied to the facts before us. It is too much akin to the employment Hodgson was supposed to be able to secure as an elevator operator. The suggestion that there is a list of '221 jobs that can be performed by persons with minimal education and that are sedentary in character or require only light exertion' is not very meaningful. There must be something more tangible establishing what employment opportunities there are for a man with his impairment. The failure of the Secretary to establish the existence of that kind of genuine employment opportunity is patent. * * *" (Footnotes omitted.)

"Merely citing catalogues which list capsule descriptions of thousands of jobs available to prospective employees is not sufficient." Ray v. Celebrezze, 4 Cir. 1961, 340 F.2d 556. Such studies have been rejected as substantial evidence even when the testimony has come from Vocational Counselors specially engaged by the Government. Hodgson v. Cele-

brezze, 3 Cir. 1966, 357 F.2d 750; Gardner v. Stewart, 4 Cir. 1966, 361 F.2d 827; Miracle v. Celebrezze, 6 Cir. 1965, 351 F.2d 361, 381; Massey v. Celebrezze, 6 Cir. 1965, 345 F.2d 146; Cyrus v. Celebrezze, 4 Cir. 1965, 341 F.2d 192; Frazier v. Celebrezze, E.D.S.C.1965, 236 F. Supp. 938; Riddle v. Celebrezze, W.D. S.C.1964, 235 F.Supp. 657; Goodwin v. Celebrezze, W.D.La.1965, 239 F.Supp. 487; and Hamlet v. Celebrezze, E.D. S.C.1965, 238 F.Supp. 676.

Ely, Circuit Judge, dissented.

 Viewing the record as a whole, the evidence falls short of showing genuine employment opportunities available to this 62 year old plaintiff with his background, education and physical condition. The judgment will be reversed with direction to the district court to enter an order requiring the Secretary to grant the plaintiff's application for disability benefits and for a period of disability.