Frank **ABSHIRE**, Ruth J. Abshire and Donald E. Abshire, David R. Abshire and Keith D. Abshire, each of whom is an infant, who individually sue by Frank Abshire, as their father and next friend, Plaintiffs,

v.

John W. **GARDNER**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 985.

United States District Court
S. D. West Virginia,
Bluefield Division.

Feb. 3, 1967.

Fred O. Blue, Kwass, Stone & Blue, Bluefield, W. Va., for plaintiffs.

Milton J. Ferguson, U. S. Atty., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on April 27, 1965 became the final decision of the Secretary on October 13, 1966, when the Appeals Council denied plaintiff's request for review. The final decision holds that plaintiff is not entitled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act prior or subsequent to the 1965 Amendments.[1]

Plaintiff last met the Act's special earnings requirements as of June 30, 1960. Under the Act, 42 U.S.C.A. § 416(i), an individual shall not be considered to be under a disability unless he furnishes such proof of the existence

---

1. Section 303(a) of Public Law 89–97, 79 Stat. 286 (the 1965 Social Security Amendments) amends the meaning of the term "disability" as found in 42 U.S.C.A. § 423 as follows: "(I)nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Previously the physical or mental impairment had to " * * *

be expected to result in death or to be of long-continued and indefinite duration."

Under the provisions of Section 303(f) of the law a period of disability may be established by use of this amended definition. However, benefits would only be payable beginning in September of 1965 or the seventh month in which the individual has been determined to be under disability under the amended test, whichever is later.

thereof as may be required, thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to June 30, 1960, when he last met the insured status, though it need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The standard of review in actions of this nature is found in Section 205(g) of the Social Security Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the courts are not to try the case de novo, and if the findings of the Secretary are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the courts should surrender their "traditional function," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to see to it that the administrative agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the courts have held it to be more than a scintilla, but less than a preponderance, Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court is to determine whether the defendant's denial of the plaintiff's claim is supported by substantial evidence.

In resolving whether or not the Secretary's determination 'that plaintiff has failed to establish his inability to engage in substantial gainful activity prior to June 30, 1960 is supported by substantial evidence, the Court must examine not only the objective findings of the examining and treating physicians, including their diagnoses and expert medical opinions, but the subjective evidence of pain and disability as well as plaintiff's educational background, work history and present age. Underwood v. Ribicoff, supra; Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965). However, the law is clear that any disability that has its onset or becomes disabling after the claimant last meets the earnings requirements may not be the basis for a favorable finding. Taylor v. Ribicoff, 204 F.Supp. 144 (S.D.W.Va.1962), nor is a readily remediable condition one upon which benefits may be granted, Allison v. Ribicoff, 307 F.2d 379 (4th Cir. 1962). That plaintiff may now be disabled because of a deterioration in his condition or as a result of other ailments that were not present as of June 30, 1960, or as of that date he suffered from a remediable disabling condition which could, with safety, have been eradicated is not pertinent to this decision.

Plaintiff was born November 13, 1917, is married and has two children living at home. He has a fifth grade education and has worked at a number of unskilled jobs, including truck driver, trackman on the railroad and pipefitter's helper. His military service was as an orderly in the medical corps. Outside of ADCU work as a janitor's helper, his last employment was in 1957 managing a farm. This was terminated by the death of his employer and he has not held steady employment since that time. In his claim for disability filed July 26, 1965, he alleged that he became unable to work in November 1964 because of arthritis, both legs having been broken and resulting in his being unable to stand on his feet, poor circulation in arms and legs, and a nose condition.

Prior to 1960, plaintiff's major, if not sole, disabling condition was a deformed right leg caused by improper healing of a broken ankle in 1947. There is very little evidence in this record that he suffered from the other conditions of which he presently complains at the time of, or prior to, the expiration of his insured status. In any event, his present condition will be evaluated insofar as it appears that those impairments were then existing.

The medical evidence is as follows: Dr. Joe E. McCary examined plaintiff for the West Virginia Department of Welfare on June 30, 1957. He found his right leg to be ½ inch shorter than the left as a result of a deformity of the right lower tibia. It was noted he was using a cane and, although unable to stand or walk a long distance, he was believed to be able to work full time at jobs not requiring standing for long periods. Dr. McCary was also of the opinion that he might be helped by orthopedic procedures.

Dr. R. R. Raub, full-time specialist in orthopedic surgery, examined plaintiff July 31, 1957, and found him to have a healed fracture of the lower right leg with extreme angulation that probably was not acceptable from a functional standpoint. Dr. Raub felt that an ostecotomy should be performed since he thought that otherwise plaintiff would eventually have arthritis in his knee or ankle. Although not positive that he would be able to return to work after surgery, the doctor believed the condition could be adequately corrected. He also stated that it was his feeling that plaintiff did not desire this procedure to be followed.

The next medical report is that of Dr. Daniel Hale to the West Virginia Department of Welfare, dated April 21, 1961. Plaintiff complained of pain in his joints, hands and feet, stating that he had had arthritis for several years and that it was getting worse. The doctor diagnosed arthritis and concluded that he was unable to work.

Plaintiff was examined by Dr. Richard L. Stovall on November 11, 1962. Dr. Stovall found him to be suffering from urinary tract infection and an old right leg fracture. Medication was recommended for the arthritic pain and it was concluded that he could perform most any type of work that did not require heavy lifting.

Plaintiff was hospitalized in a Veterans' Administration Hospital from March 29 to May 21, 1965. His nose was found to be moderately obstructed by deviation of the nasal septum and he was suffering from a severe gingival infection. The back showed moderate scoliosis and was tender to pressure. Laboratory tests including the Latex test for rheumatoid arthritis revealed no abnormalities. Ankle X-rays revealed the improperly healed right tibia. Spinal X-rays showed moderate osteoarthritic lipping of the upper dorsal vertebrae although the cervical and lumbosacral spine appeared normal. Slight arteriosclerosis of the abdominal aorta was noted. The diagnosis was minimal osteoarthritis of the dorsal spine; arthralgia, neck shoulder, ankles, of undetermined cause; severe peridontitis; and right leg deformity.

The last three reports are by Dr. W. M. Harloe, dated August 19, 1965, September 14, 1965 and January 12, 1966. He found plaintiff to be suffering from peripheral vascular disease and post fracture deformities in both legs. December 20, 1965 chest X-rays revealed mild emphysema and fibrosis, with no evidence of superimposed active disease process. The doctor was of the opinion that he was totally and permanently disabled.

Although Dr. Raub did not say that if plaintiff submitted to corrective surgery on his leg he would be able to return to full-time work, he did state that he felt that the condition was correctable. The suggested operation is not nearly as dangerous or painful as that found in Purdham v. Celebrezze, 349 F.2d 828 (4th Cir. 1965). While there is no positive assurance that plaintiff would have been fully able to work after such surgery, his refusal to submit to it is a factor to

be considered. It is also significant that he continued working for nearly ten years before succumbing to this condition.

■■ The only other condition which might have been affecting plaintiff prior to June 30, 1960 appears to be arthritis. We recognize that when an individual suffers from a condition such as arthritis with pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling, it will support a claim for benefits, Ber v. Celebrezze, 332 F.2d 293 (2d Cir. 1964). While it may be that there has been some deterioration since the diagnosis in April 1961 and he may have suffered from arthritis prior to June of 1960, yet Dr. Stovall did not consider it disabling in November 1962. It is sheer speculation on the basis of this record to say that this condition was sufficiently severe as of June 1960 to singularly or in combination render plaintiff disabled under the Act.

Considerable reliance is placed by the Secretary on plaintiff's working from May 1963 until October 1964 as an assistant custodian for the Mercer County Board of Education under the ADCU program. During this time he worked eight hours a day, five days a week; an average of 146 hours per month. His supervisor stated that his work was satisfactory and that he was regarded as a good man. Plaintiff ceased this employment on advice of his doctor. Standing alone, we do not believe that this work creates a sufficient basis for concluding that it establishes that plaintiff retained the ability to engage in substantial gainful activity within the rule of Simmons v. Celebrezze, 362 F.2d 753

(4th Cir. 1966) and Canaday v. Celebrezze, 367 F.2d 486 (4th Cir. 1966), particularly in view of the testimony of Dr. Harry J. Cannon, the vocational witness, as to the infrequency of such jobs.

■■ On the other hand, when all these factors are considered together, the long period worked with the deformed leg, his reluctance to submit to reasonable corrective surgery, the lack of objective or subjective findings of any other impairment prior to June 30, 1960, the doctors' opinions after the expiration of the insured status that he could work so long as there was no heavy lifting involved, his janitorial work for 1½ years under the ADCU program and the statement in his application that he became unable to work in November 1964, leads us to conclude (though we specifically decline to agree with the hearing examiner's findings of fact and conclusions of law 3 and 4)[2] that there is substantial evidence to support a finding that plaintiff has failed to meet his burden of showing an inability to engage in any form of substantial gainful activity as of June 30, 1960.

■■ Plaintiff failed to show an inability to return to his prior work, consequently it is not necessary to consider the effect of his condition within the framework of his work history, education and age, Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962), or for the Secretary to show the general availability of employment for which he is fit and qualified, as established in the cases of Ray v. Celebrezze, 340 F.2d 556 (4th Cir. 1965) and Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966). Had plaintiff met this initial burden, the Secretary's findings in this area would necessitate a reversal of the entire matter.

2. "3. That claimant's employment as an assistant custodian for a period from May 9, 1963 through October 19, 1964, in the Unemployed Fathers' Program, constituted participation in substantial gainful activity at a time subsequent to when claimant alleged a disability so as to preclude a finding of disability within the meaning of the Social Security Act, as amended prior to July 30, 1965, and

"4. That claimant, at a time when he last met the earnings requirements, had a residual physical and vocational ability to participate in a form of light to moderate employment in the nature of a custodian or assistant custodian, as he demonstrated subsequent thereto, and that type of work was available to claimant in the community in which he lives."

However, on this review, we must view the record as a whole, not for the purpose of making independent findings, but to determine whether the administrative findings have substantial evidentiary support. If we find that the support exists, as we do here, it is our clear duty under the mandate of the statute to uphold them, even though we might have arrived at a different conclusion initially, Snyder v. Ribicoff, supra.

Accordingly, in view of the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's motion for summary judgment must be granted.