**Louise K. WOOLEY**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 42663.**

United States District Court
E. D. Pennsylvania.

April 11, 1968.

Harvey N. Schmidt, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

WOOD, District Judge.

This is a suit by a claimant under 42 U.S.C. § 405(g) to review a decision of a Social Security hearing examiner which became final when the Appeals Council refused review.[1] The examiner held that the plaintiff was not entitled to a period of disability and disability insurance benefits on the basis of her application

1. Cases of this type seem to be legion. Our Court as many others has had to give exhaustive study of them and they frequently result in a remand and occasionally in summary judgment whereby further efforts of the appellate court are needed. With all due respect, we state that Congress should give considerable attention to these problems. The Act either fails to provide safeguards for the individual involved or is not being properly administered. This is not to mean that our decision in this particular case will be upheld. However, I would assume that almost every judge would agree with my conclusion that with more adequate legislation and more forceful administration procedures that we would not continually have these cases before the Court. This is stated of course with utmost respect for Congress. We would hope however that the problems would receive consideration from the proper authorities or committees in respect to 42 U.S.C. § 423. We think that an examination of the many cases would indicate that the plaintiff had died before there was any relief whatsoever.

filed on May 25, 1965.[2] We have considered his opinion in the light of the evidence before him and have concluded that this case should be remanded for further disposition.

The claimant was born on April 14, 1924 and has had a seventh grade education. She is now married and has one child. Mrs. Wooley began working at 17 years of age as a salad maker and subsequently worked as a meat cutter, hospital maid and cleaning woman. From August, 1951 to December, 1960, she worked at Kenny Vacuum Equipment Division in Camden, New Jersey coating, inspecting and cementing optical lenses. This job appears to have been an almost mechanical semi-skilled operation done while *sitting or standing without moving.* It involved no heavy lifting or anything that might be called strenuous.

She testified that she quit working on December 30, 1960 because of severe chest pains radiating around her back and her shoulder blades "like pins and needles sticking in." The doctor recommended hospitalization at St. Luke's Children's Medical Center where she stayed from December 31, 1960 to January 7, 1961. She has done no work since except for two days as a nurse's aid in June, 1966. She claims that she has been unable even to do her housework. Mrs. Wooley testified that she sought work in May, 1966 in order to prove that she was unable to work. She was rejected by her former employer, by Temple University and by a union local.

Claimant contends she is disabled because of severe headaches and chest pains and because "my legs always feel like they are drawing on me." She has also complained of dizziness and falling out spells, being unable at times to lower her head. While some medical reports have diagnosed possible cardiovascular disease, the examiner found that the substantial medical evidence did not establish the presence of significant heart disease. With this we cannot disagree in light of Dr. Conn's reports.[3]

■ There are medical reports however on the record which indicate that claimant has "essential hypertension" and "psychoneurosis, anxiety hysteria, moderately severe with depressive features," (P. 123) which may cause her dizziness and headaches. The examiner did not find the non-existence of either the symptoms or the possible causes. He relied on the regulations of the Social Security Administration to prove that the diagnoses could not result in disability.[4] In so doing, we believe that he took too harsh and inflexible a view of the regulations. They are intended as guidelines, not as conditions for recovery.[5] In particular circumstances, they are helpful but must be used with an eye

2. "Except for purposes of sections 402 (d), 423 and 425 of this title, the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *" 42 U.S.C.A. § 416(i) (1) (SUPP.)

3. The examiner's decision must be affirmed if supported by substantial evidence in the record as a whole.

4. (a) "Generally, hypertensive disease does not cause severe loss of capacity until it becomes severe enough to cause significant abnormalities in one or more of the four main end-organs: i. e., the heart, the brain, the kidneys or the eyes." 20 C.F.R. 404.1514(d). The examiner stated that the evidence does not establish such end-organ involvement.

(b) "In determining the effect of psychoneuroses, consideration is given to whether the psychoneurosis has resulted in severe social, personal and occupational regression or confinement to a mental hospital and whether it persists despite appropriate treatment." 20 C.F.R. 404.-1519(c) (2) (ii). The examiner said that the record did not show such regression or confinement to a mental hospital; nor was there evidence of such disorganized thinking, bizarre conduct or emotional imbalance as would prevent the claimant from working.

5. Heslep v. Celebrezze, 356 F.2d 891 (4th Cir. 1966).

to the standards defined in the Act and by the Courts.[6]

In substance, claimant undoubtedly has impairments. The problem is whether these impairments have resulted in an inability to perform any substantial gainful employment. The examiner in determining such must first decide if claimant because of the impairments could no longer do the work at which she is experienced as of the last day she was insured.[7] The examiner must also consider whether Mrs. Wooley experiences the pain and headaches of which she complains, whether or not they can be related to any specific mental or physical disease. It is obvious that intense pain or severe headaches could make a person disabled. Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964).

If the examiner concludes that plaintiff can no longer perform in her former work or a related field, the Secretary must adduce some evidence from which a finding can be made that she can do some type of work actually and not apparently. In the absence of such a showing, a determination contrary to the plaintiff is not supported by substantial evidence.[8] The evidence must show what genuine employment opportunities which are available to this claimant with her background, education and physical condition. Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.[9] The testimony of Mr. Freidman, the vocational expert, fell short of the mark. First, he was asked to assume generally that claimant could do light or sedentary work. This is too vague. The question should be what this woman with her impairment can do.[10] Secondly, he was not asked whether claimant had genuine employment opportunities available to her. He merely stated what the opportunities of handicapped people were and even then said that placement quite often would require the help of rehabilitation counselors or other qualified people. Under these circumstances, the question remains whether claimant's prospects for employment are realistic or illusory.

We are remanding the case rather than entering summary judgment for claimant because there are unsettled questions and because the initial burden of proof is on plaintiff. On remand, the examiner may also consider whether Mrs. Wooley's ailments are readily remediable. Finally, he need not consider, in his discretion, any evidence of hospitalization or medical treatment after the hearing, since plaintiff's insured status was no longer in effect and she must have been disabled as of the time her insured status terminated. Abshire v. Gardner, 271 F. Supp. 927 (S.D.W.Va.1967).

6. See generally, Baker v. Gardner, 362 F. 2d 864 (3rd Cir. 1966); Hodgson v. Celebrezze, 357 F.2d 750 (3rd Cir. 1966); Bujnovsky v. Celebrezze, 343 F.2d 868 (3rd Cir. 1965); Janek v. Celebrezze, 336 F.2d 828 (3rd Cir. 1964); Stancavage v. Celebrezze, 323 F.2d 373 (3rd Cir. 1963); Dupkunis v. Celebrezze, 323 F.2d 380 (3rd Cir. 1963); Farley v. Celebrezze, 315 F.2d 704 (3rd Cir. 1963); Hodgson v. Celebrezze, 312 F.2d 260 (3rd Cir. 1963).

7. Baker v. Gardner, 362 F.2d 864 (3rd Cir. 1966).

8. Baker v. Gardner, supra.

9. Hodgson v. Celebrezze, 357 F.2d 750 (3rd Cir. 1966).

10. This may be difficult for a non-medical expert, but the medical terms can be translated into layman's language. The examiner can also point out what functions plaintiff has lost.