

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2004

# Grandillo v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3323

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Grandillo v. Comm Social Security" (2004). *2004 Decisions.* Paper 447.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/447

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

⸺

No. 03-3323

⸺


VALERIE E. GRANDILLO,

Appellant

v.


JOANNE B. BARNHART,
Commissioner of Social Security


⸺


On Appeal from the United States District Court
for the Western District of Pennsylvania
(Dist. Court Civil No. 02-cv-00775)
District Judge: Honorable William L. Standish


⸺


Submitted Under Third Circuit LAR 34.1(a)
June 24, 2004


Before: NYGAARD, MCKEE and CHERTOFF, Circuit Judges.


(Filed July 30, 2004)

OPINION

CHERTOFF, Circuit Judge.

Valerie E. Grandillo appeals from the District Court's judgment affirming the Commissioner of Social Security's denial of her application for disability insurance benefits and supplemental security income. Grandillo challenges the Administrative Law Judge's ("ALJ") determination that her subjective complaints of pain were not entirely credible, as well as the weight the ALJ afforded to certain evidence and testimony. Grandillo also challenges the ALJ's determination that the Commissioner had met her burden of establishing Grandillo's capacity for other work, given her impairments, pain, functional restrictions, age, education, and work experience. See 20 C.F.R. § 404.1520. For the reasons stated below, we will affirm the District Court's judgment.

I.

Grandillo was born on March 1, 1956. She obtained a general equivalence degree ("GED") and has past work experience as a nurse's aide and home health aide. Grandillo filed for disability benefits on or about June 22, 1999, alleging disability since November 12, 1998 due to lack of movement in her right wrist and shoulder and osteoarthritis.[1]

---

[1] Grandillo's summary judgement submission to the District Court implied that she was alleging a somewhat broader disability, including symptoms of depression. Grandillo did not base her application for disability insurance benefits and social security income on her treatment for depression. As such, to the extent that Grandillo's appeal depends on the ALJ's failure to consider those symptoms, her appeal must fail.

Grandillo's application was denied both initially and upon reconsideration. The ALJ conducted a first hearing on June 15, 2000 and concluded, without the aid of a vocational expert ("VE"), that there were numerous jobs that Grandillo could perform. The Appeals Council reversed and remanded because the ALJ had not adduced the testimony of a VE. After a second hearing on July 13, 2001—at which a VE testified—the ALJ again rendered a decision concluding that Grandillo was not entitled to benefits. On April 11, 2002, the Appeals Council denied Grandillo's request to review the ALJ's decision.

Subsequently, Grandillo, acting *pro se*, sought judicial review of the adverse decision in the United States District Court for the Western District of Pennsylvania pursuant to 42 U.S.C. § 405(g). On July 14, 2003, the Honorable William L. Standish adopted the report of Magistrate Judge Francis X. Caiazza recommending that the District Court grant the Commissioner's motion for summary judgment and deny Grandillo's cross-motion for summary judgment. This timely appeal followed.[2]

## II.

The District Court exercised jurisdiction pursuant to 42 U.S.C. § 405(g), and appellate jurisdiction is vested in this Court under 28 U.S.C. § 1291. The role of this Court is identical to that of the District Court; we must determine whether there is substantial evidence to support the Commissioner's decision. Plummer v. Apfel, 186

---

[2] Grandillo is represented on appeal. The Government contends that we should not consider several of Grandillo's arguments because they were not made in the same fashion before the District Court. But we will liberally construe Grandillo's *pro se* submissions. See Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).

F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It is less than a preponderance of the evidence but more than a mere scintilla." Id. Overall, the substantial evidence standard is a deferential standard of review. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is disabled. See 20 C.F.R. § 404.1520; see generally Plummer, 186 F.3d at 428. In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a). In step two, the Commissioner determines whether the claimant is suffering from a severe impairment. If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c). In step three, the Commissioner evaluates whether the evidence establishes that the claimant suffers from a listed impairment. If so, the claimant is automatically eligible for benefits. If the claimant does not suffer from a listed impairment or its equivalent, however, the Commissioner proceeds to the next step. 20 C.F.R. § 404.1520(d). In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. If so, the

4

claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(e). Finally, in step five the Commissioner considers whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and "residual functional capacity." If so, the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(f). In this final step, "the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." Plummer, 186 F.3d at 428.

An ALJ may reject a claim of disabling pain where "he [has] consider[ed] the subjective pain and specif[ied] his reasons for rejecting these claims and [has] support[ed] his conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir.1990). Further, while this Court has acknowledged that "greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant . . . [,] a statement by a plaintiff's treating physician that she is 'disabled' or 'unable to work' is not dispositive." Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994). Rather, "the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." Id. at 48; see also Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir.1991) (concluding ALJ correctly determined opinions of treating physicians were not controlling).

5

The issues on appeal arise from the ALJ's general determination of credibility, his weighing of evidence, and his determination at step five.

III.

Grandillo raises three criticisms of the ALJ's review of the evidence: (1) that the ALJ erred when he determined that her subjective complaints of pain were not entirely credible; (2) that the ALJ erred by "improperly substituting his own opinion for that of medical experts, [and] improperly gave [sic] no consideration to [her] struggle with reflex sympathetic dystrophy;"[3] and (3) that the ALJ failed to take into account the adverse side-effects of Grandillo's medication.

As already observed, an ALJ is free to reject claims of disabling pain as long as he "consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record." Matullo, 926 F.2d at 245. That is precisely what occurred here. It is clear from the ALJ's extensive discussion of Grandillo's application, her testimony, and her medical history that the ALJ considered all of the evidence—including her allegations of pain—and determined that her pain did not rise to the severity that she claimed.

Notably, the ALJ did not entirely dismiss Grandillo's claims of pain. Instead, the ALJ partially rejected Grandillo's characterization of the severity of her pain because, among other things, she had not been specifically treated for pain for the previous two

---

[3] Appellant's Br. at 17.

years, had received medication for muscle spasms and had "less than exemplary" compliance with physical therapy. A.R. at 19-20. Indeed, the record discloses that in November, 1999, Grandillo told her occupational therapist that she had done 17(!) loads of laundry in one day, and that "loosened" her stiff wrist, A.R. at 323, which was a principal area of her pain complaints. There was substantial evidence in the record to support the conclusion that Grandillo's pain was not so severe as to prevent her from performing substantial employment.

Grandillo also contends that the ALJ erred by failing to afford appropriate weight to the testimony of Dr. Alcoff, her treating physician, and to her "struggle with reflex sympathetic dystrophy." An ALJ should afford more weight to a treating physician than a non-treating physician. Adorno, 40 F.3d at 47-48. But in order to discharge his duty, an ALJ must also "weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." Id. at 48. The ALJ's extensive review of the evidence here makes clear that the he afforded appropriate weight to the testimony and opinion of the medical experts and to Grandillo's "struggle with reflex sympathetic dystrophy." In particular, the ALJ explained that the treating physician's conclusions were "inconsistent with his own clinical findings." A.R. at 22. Our review of the clinical findings supports this determination. See A.R. at 296-98. We also agree with the District Court that the ALJ was entitled not to give weight to the finding of reflex sympathetic dystrophy because it was contradicted by other findings in

the record.  See A.R. at 310, 312.

Third, Grandillo contends that the ALJ failed to take into account the adverse side-effects of Grandillo's medication.  But, as the government observes, the record is devoid of any evidence that Grandillo reported these adverse side-effects to her treating physicians or that those physicians adjusted the dosage or nature of her medication to control for poor toleration.  The mere fact that Grandillo was taking medication known to induce adverse side-effects in some small percentage of patients did not require the ALJ to assume Grandillo actually experienced those side effects.

The only evidence in the record supporting Grandillo's claim that she suffered adverse side-effects from her medication were her own conclusory statements to that effect on a survey she filled out to obtain the benefits she now seeks.  A.R. at 168-69, 180.  Even if such conclusory statements alone were sufficient to undermine the ALJ's determination—which they are not—the only side-effects she reports are tiredness and an inability to "think clearly and concentrate" due to Vicodan, see A.R. at 168-69; and periodic ulcers due to Celebrex.  See A.R. at 180.  Of these, only the fatigue and interference with thought could reasonably be perceived as affecting her ability to work.  But Grandillo's own testimony suggests that she took Vicodan for just a short period of time following her initial wrist injury.  A.R. at 69.  That being so, any side-effects she may have experienced from taking Vicodan would not have affected her ability to work in the long term.

In sum, Grandillo has not cited to any medical evidence demonstrating that she suffered adverse side effects from her medication. Further, her own conclusory statements would not establish a sufficient ongoing struggle with any side-effects to undermine the ALJ's determination. The ALJ's failure to take into account the side-effects of Grandillo's medication was not error.

IV.

Finally, Grandillo challenges the ALJ's determination at step five. She asserts that it is not sufficient for the Commissioner to establish that jobs exist in the national economy that she might perform. Rather, Grandillo cites Kattes v. Califano, 496 F. Supp. 385, 388 (E.D. Pa. 1980), for the proposition that the Commissioner must also show that Grandillo would be able to "compete for" those jobs.

To be sure, Kattes did state that the Commissioner must make some showing that "there exists a reasonable possibility that the impaired wage earner can compete with other workers for the jobs for which he is qualified." 496 F. Supp. at 388. But Kattes cited as authority this Court's decision in Baker v. Gardner, 362 F.2d 864, 868-69 (3d Cir. 1966). Baker is a far cry from mandating a showing that the applicant be able to "compete with other workers for the jobs for which he is qualified." At any rate, in 1967, Congress amended 42 U.S.C. § 423 to add subsection (d)(2)(A), which states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

9

gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or *whether he would be hired if he applied for work*.

(emphasis added). This language stemmed the tide of cases reading into the Social Security Act a requirement that the applicant be unable to compete with other workers for the jobs for which he is qualified. See Orzel v. Finch, 445 F.2d 150, 153 & n.2 (7th Cir. 1971). It is clear, therefore, that Kattes cited Baker without appreciating that the law had changed in the interim. Obviously, we are not bound by the district court opinion in Kattes in any event. In light of clear statutory language, we will not saddle the Commissioner with making a showing that the applicant is unable to compete with other workers for the jobs for which a he is qualified.

## IV.

For the foregoing reasons, the order of the District Court will be affirmed.