Henry P. SHEMANSKI

v.

David MATHEWS, Secretary of Health,
Education and Welfare.

Civ. A. No. 76–487.

United States District Court,
E. D. Pennsylvania.

Nov. 15, 1976.

Lester Krasno, Pottsville, Pa., for plaintiff.

David W. Marston, U. S. Atty., William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

This is an action under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare (Secretary), denying plaintiff's claim for disability insurance benefits. Presently before the court are cross-motions of the parties for summary judgment on an appeal from a final decision of the Secretary.

Plaintiff filed a formal application on December 5, 1973 for disability benefits alleging disability as of August 27, 1973. The application was initially denied on December 14, 1973 by the Bureau of Disability Insurance. A request for reconsideration was filed on January 7, 1974. The case was reconsidered by the Bureau of Disability Insurance and on March 21, 1974, plaintiff's claim was again denied. Thereafter, on April 10, 1974, plaintiff requested a hearing. An administrative law judge, before whom plaintiff appeared with counsel on April 10, 1975, considered the case *de novo*, and on October 6, 1975, found plaintiff not entitled to benefits under the Act. The decision of the administrative law judge became the final decision of the Secretary when the Appeals Council approved it on February 9, 1976.

The jurisdiction of this court has not been questioned. The only issue involved is whether the final decision of the Secretary is supported by substantial evidence or if the said decision is contrary to both the facts and the law applicable in this proceeding.

Plaintiff's initial work experience was at age nine in 1931 when he worked inside coal mines helping to bring out coal. After graduation from high school in 1939, he was employed as a machine operator on a multiple drill press. In 1943, plaintiff entered the Air Force where he remained until the end of 1945. Subsequent to the war, plaintiff worked as a general laborer until 1952, when he commenced employment with the Alcoa Company in various capacities, including general laborer, but for the most part as a tool and die man. After fourteen years, plaintiff left Alcoa and went to work for a beer distributor for two years. In 1968, plaintiff left the beer distributor and went to work for Kaiser Mirawal in Port Carbon, Pennsylvania. At Kaiser Mirawal plaintiff was a material handler and in that capacity he handled asbestos sheets and cardboard plaster boards and other types of material that were used to construct masonite panels. In this particular job plaintiff used a circular saw in order to cut the various panels. As the result of this cutting, a great deal of dust flew into the air. The plaintiff worked continuously at Kaiser Mirawal until August or September, 1973.

Sometime in the early '50's plaintiff became totally blind in one eye. However, this did not hinder plaintiff in his various employments. Plaintiff was hospitalized at the Ashland State General Hospital for about seven days from November 5, 1969 to November 12, 1969. The 1969 hospitalization was triggered by plaintiff's complaints of chest discomfort or tightness, dyspnea (shortness of breath), chills, a productive cough, and vomiting. In the hospital discharge summary, Dr. Miller, plaintiff's attending physician, diagnosed the problems as acute bronchitis and acute gastro enteritis. Approximately two years later, the records of the Ashland State General Hospital established that plaintiff was again hospitalized for a period of about 6 days from May 21, 1971 to May 27, 1971, and that Dr. Miller was again the attending physician. Plaintiff's primary complaint at that time was tenderness in the right upper and lower quadrants of the abdomen. Dr. Miller's diagnosis was acute cholecystitis, anthrasilicosis with emphysema. A chest x-ray during the 1971 hospitalization was construed as being compatible with generalized emphysema and suggestive of early pneumoconiosis. Dr. Miller again took chest x-rays on August 8, 1973, which x-rays were interpreted as compatible with pneumoconiosis and emphysema. Dr. Miller's diagnosis on August 28, 1973 was that plaintiff suffers from pneumoconiosis and emphysema. Dr. Miller, whom the government points out is a general practitioner, revealed that dysp-

nea (shortness of breath) would appear on mild to moderate exertion. Dr. Miller submitted a final report in March, 1975, diagnosing plaintiff's problems as emphysema and pneumoconiosis and registered the opinion that plaintiff was presently disabled.

At the invitation of the Pennsylvania Disability Determination Section, Dr. B. B. Platt, an internist, performed an examination of the plaintiff on November 7, 1973. Dr. Platt's evaluation included ventilatory studies (pulmonary function tests) which were construed as showing mild to moderate obstructive and restricted lung disease that responded very well to bronchodilators (respiratory medication). Dr. Platt observed, although he had not seen the actual film, that a chest x-ray report indicated pneumoconiosis and emphysema, category II. Dr. Platt concluded that plaintiff's ventilatory defect was not sufficient enough to account for his symptoms. He did not offer any other explanation for plaintiff's symptoms which will be described hereinafter.

At the hearing in April, 1975, three reports prepared over a period from September, 1973, to April, 1975 were submitted by Dr. William V. Dzurek, a radiologist, who also presented testimony in plaintiff's behalf during the course of the hearing. On the basis of his evaluation of plaintiff, Dr. Dzurek diagnosed the problem as first degree miner's pneumoconiosis and silicosis with emphysema of a very severe type and registered the opinion that plaintiff was totally and permanently disabled for any type of work.

Subsequent to the hearing in April, 1975, plaintiff was referred by the administrative law judge to Dr. Leo J. Corazza, an internist. Dr. Corazza's initial report on July 14, 1975 did not give a definite opinion as to whether or not he felt plaintiff was totally disabled, but he did make the following observations:

1. "The spirogram is compatible with the diagnosis of some chronic pulmonary disease, obstructive in nature.";
2. "X-ray report: The chest x-ray demonstrates nothing definite. It is interpreted as mild findings, compatible with Cat. I. Pneumoconiosis.";
3. "Impressions: (1) Chronic bronchitis. (2) Pulmonary emphysema. (3) Cataract, O.D. (4) Possible coronary artery disease."; and
4. "I cannot account for the wide discrepancy in ventilatory studies from 1973–1975. There is a considerable amount of bronchospasm at the present time and this should respond to intensive therapy."

Dr. Corazza subsequently received a letter from the disability examiner thanking him for his excellent report concerning Henry Shemanski. The disability examiner then asked him:

"Would you kindly give us your opinion regarding his ability to perform light and/or sedentary work activity as described in Judge Brown's letter?"

Dr. Corazza replied on July 25, 1975, in one sentence, and I quote:

"In my opinion, Henry Shemanski is capable of performing suddentary (sic) or light work."

Plaintiff's *uncontradicted* testimony concerning his symptoms is summarized as follows. Plaintiff stopped working in August of 1973 because of a shortness of breath and pain in the chest and lack of wind. The pains in the chest and the shortness of breath appear immediately upon any exertion. The spells of shortness of breath and chest pain last 10 to 15 minutes and are coupled with coughing spells. When plaintiff has his coughing spells he spits up a sputum and on occasion has difficulty in expectorating his phlegm. When plaintiff falls asleep his arms and hands become numb. Plaintiff takes a white pill four times a day in order to relieve congestion in his air passages. The plaintiff is unable to do anything around his home, is unable to climb stairs, and is unable to walk for more than one block on a level surface. Plaintiff has great difficulty in bending or kneeling and even experiences discomfort when sitting. Plaintiff is also blind in one eye. In short, plaintiff has been relegated to an

existence of sitting in his living room chair watching television all day long.

In reaching an ultimate determination, I am required to consider the entire record. *Boyd v. Folsom*, 257 F.2d 778 (3d Cir. 1958). In addition, the law is well settled that establishing disability is a two step process. First, the plaintiff must prove that he has a medically determinable impairment as depicted in 42 U.S.C. § 423(d) which provides:

"(d)(1) . . .

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

(B) . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) . . .

(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) . . .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

Second, plaintiff must prove that the impairment renders him unable to engage in any substantial gainful employment. *Baker v. Gardner*, 362 F.2d 864 (3d Cir. 1966). The first criterion above has been clearly established. All the doctors agree that plaintiff at least has pneumoconiosis Cat. I and vision in only one eye. The administrative law judge found "the collective effect of his established medically determinable impairment is to rule out medium and heavy work and work in industry and similar adverse environments." What I must determine is whether or not the Secretary had substantial evidence viewing the record as a whole to determine whether or not plaintiff is capable of engaging in any substantial gainful employment, such employment consisting of only light or sedentary work.

From the above analysis of the various medical opinions, it becomes quite apparent to me, and should have been apparent to the Secretary, that the only doctors who gave a definite opinion, and who were sure of their opinion, concluded that plaintiff was totally and permanently disabled. Although Dr. Corazza's opinion is considered definite by the government, I have taken into consideration the fact that his initial report upon examination was not so definite and that he gave this opinion in the response to a specific question put to him by the disability examiner. The undisputed facts are that plaintiff is almost totally incapable of leaving his own home on his own power. The only facts that are in dispute are medical questions as to categorization of plaintiff's infirmities. There is no evidence and nobody testified or even suggested that plaintiff is capable of walking or driving to a place of employment, or in fact being able to remain there for any length of time or perform any duties whatsoever. In a similar case in 1974 before the

Third Circuit Court of Appeals, the court stated:

". . . Furthermore, he did not address himself to the testimony of plaintiff and his wife concerning plaintiff's pain, his alleged inability to dress himself or bathe, his limitations on sitting, standing, and walking, as well as other restrictions caused by his extensive hip and leg deformities. As fact finder he has the right to reject their testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all. 'In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age, educational background and work experience.' *Mode v. Celebrezze,* 359 F.2d 135, 136 (4th Cir. 1966). Pain, in itself, may be a disabling condition, *Marunich v. Richardson,* 335 F.Supp. 870 (W.D.Pa. 1971), and the present record includes medical data which would not contradict, indeed, would support plaintiff's complaints of pain."

*Baerga v. Richardson,* 500 F.2d 309 (1974).

Mr. George Starosta, a vocational specialist, was invited by the administrative law judge to conduct a professional vocational assessment and to present expert vocational testimony at the hearing in April, 1975. He had reviewed all the documentation of record and had heard the testimony at the hearing. From all the evidence presented to me, as it was presented to him, I can see no possibility of arriving at a conclusion other than the one arrived at by Mr. Starosta which I will quote below. The administrative law judge asked him the following question:

"Now finally, I want you to take into full account the description that Mr. Shemanski's made of his physical difficulties. I want you to take into account his description of his daily routine with particular reference to disturbed sleep pattern uh, in the evening, and also I want you to take into account the opinion testified to

by Dr. Dzurek when he was here. Taking all these factors into account, is there any type of work activity that you can suggest in this context for which Mr. Shemanski would be vocationally suited?"

Mr. Starosta responded:

"I would say that he couldn't perform any of these jobs that I have listed, even though they're like sedentary in nature, they will still require a 7½ to 8 hour endurance—and like he had said that he seep—sleeps 6–7 hours a night, but it's a restless sleep and that uh, he has continual chest pains and with the continual coughing I don't think he would be able to endure 7½–8 hour work day, 5 days a week."

Although some of the medical experts may differ as to the exact categorization of plaintiff's ailments, as aforesaid, nobody seems to disagree with the conclusion that plaintiff is unable to work; therefore, I am denying the government's motion for summary judgment and granting plaintiff's motion for summary judgment.