Acey ATKINS, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 76 C 4242.

United States District Court, N. D. Illinois, E. D.

Feb. 27, 1978.

Sheldon A. Harris, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Marvin E. Gavin, Regional Counsel, Dept. of Health, Education & Welfare, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

The plaintiff appeals from the denial by the Secretary of Health, Education and Welfare of his application for the establishment of a period of disability under § 216(i) of the Social Security Act, 42 U.S.C. § 416(i), and for disability insurance benefits under § 223 of the Act, 42 U.S.C. § 423. Before the Court are cross-motions for summary judgment. After review of the record under the narrow scope provided in 42 U.S.C. § 205(g) which allows us only to determine whether the final decision of the Secretary is supported by substantial evidence, based on the record as a whole, *Moon v. Celebrezze*, 340 F.2d 926 (7th Cir., 1965), plaintiff's motion is granted for the reasons noted below.

Mr. Atkins filed his application for disability benefits on February 5, 1974, alleging that he became unable to work in February, 1971. The application was denied and that denial was affirmed after reconsideration by the Bureau of Disability Insurance of the Social Security Administration. An administrative law judge considered the case de novo and heard testimony from the plaintiff, his attorney and a vocational expert in addition to receiving extensive medical records and reports into evidence. On August 19, 1976, the administrative law judge found that the plaintiff was not under a disability on June 30, 1976 when he last had the necessary insured status; the Appeals Council affirmed that decision on December 8, 1976.

The testimony and written documents produced during the course of these proceedings have provided a substantial amount of information. Mr. Atkins was born in Mississippi in 1927 and although he attended school through the fourth grade, he cannot read or write. After years of work in Mississippi as a farm laborer he came to Chicago where from 1965 to 1971 he worked as a cabinet inspector for the Zenith Radio Corporation. It is undisputed that he slipped and fell on a patch of ice in the company parking lot in February of 1971; the plaintiff dates his disability from this time and alleges that his back trouble is compounded by nervous heart, arthritis and loss of sight in his right eye.

On his own behalf, Mr. Atkins testified that he discontinued working in February, 1971, upon the direction of the doctor to whom he was sent by his employer, the Zenith Corporation. Therapy treatments, medication and a back brace were prescribed, and he made other visits to clinics and physicians, but was never hospitalized for the back condition which persisted. A widower, he now lives alone except for the assistance of a teenage daughter who does the shopping, housekeeping and all but some of the light cooking. Sometimes he goes to church, but he can no longer drive an automobile, walk for more than a short period of time, or bend and lift objects from a level below his waist. He has had no employment since 1971 and subsists on payments from sources of public aid.

The medical evidence was collected from a variety of sources. It was undisputed that the plaintiff was hospitalized for eye surgery in 1973 and that he now suffers from severely limited vision of the right eye. As to the reports from physicians concerning the condition of the plaintiff's back and lower extremities, there are numerous test results and written evaluations, five produced by the plaintiff in support of his claim and two solicited by the Secretary. All of the reports submitted by doctors who have treated and examined plaintiff over a period of time have diagnosed inability to resume his former employment.[1] In con-

---

1. On April 20, 1971, Dr. Ernest Olivieri, a general practitioner, advised limited activity and noted that the prognosis for improvement was guarded.

After June 18, 1971, Dr. Samuel Rubert, an industrial orthopedist, found residual complaints and findings to be disabling for heavy work, with only a possibility of light work

trast to this picture of a progressing disability which has developed into a permanent disablement are the two reports produced by the doctors of the Social Security Administration, both of which were based on review of medical records and a personal examination. Each of these orthopedists concluded that the disability which they discerned did not completely preclude some sort of light and sedentary work.[2] However, despite the differing conclusions concerning the plaintiff's current physical capacities for work, all of the medical personnel agree that the claimant suffers from back pain, that his movement is restricted and slow, and that he has degenerative disc disease of the lumbar spine.

■ Legal establishment of a disability which would entitle plaintiff to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months; and second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful activity. *Workman v. Celebrezze,* 360 F.2d 877 (7th Cir., 1966). The plaintiff may establish his claim to benefits by showing that he is unable to perform his former job due to his disability; at that point the burden then shifts to the Secretary to produce evidence that will justify a finding that there is available some other kind of substantial gainful employment which the plaintiff is able to perform. *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir., 1974).

There is agreement in this case that Mr. Atkins has an impairment which prevents him from returning to his previous job on the Zenith assembly line, but the government contends that he has not demonstrated a disability which prevents him from securing some kind of substantial gainful employment, specifically some kind of full-time sedentary work. After review, however, we find that the record as presented to this Court does not contain substantial evidence which would support that conclusion; quite to the contrary, it leads inexorably to a finding of complete disability.

■ The administrative law judge first found that the lack of vision in the claimant's right eye does not constitute a disqualification for all work activity since many jobs require only monocular vision. Thereafter, he focused his evidentiary findings on the medical evidence submitted in corroboration of the claim of back pain and injury. Although recognizing the validity of the claimant's own testimony on the subject of pain the record is bereft of any indication that this subjective evidence was accorded the necessary serious consideration in the process of evaluating the total evidence. *Thorne v. Weinberger,* 530 F.2d 580 (4th Cir., 1976). Rather the sifting of medical evidence was the focus of the evaluation, and here again the administrative law judge lightly dismissed the findings of disability offered by the plaintiff's current treating physicians in direct contravention of the standards of evidentiary weight enunciated by the United States Court of Appeals for the Seventh Circuit in the recent decision of *Allen v. Weinberger,* 552 F.2d 781 (7th Cir., 1977).

because of lack of use of 35% of the right leg and 25% of the left leg.

On March 14, 1974, Dr. L. Gluckman, an internist now deceased, made an examination and noted limitations on movement in the lumbar area and mild arthritic changes.

On December 14, 1975, Dr. Robert Busch, an orthopedic surgeon, after examination and testing, found the plaintiff disabled for return to work.

On June 28, 1976, Dr. Gerald Owen McDonald, the plaintiff's current treating surgeon, concluded that the damage to the lower back

and extremities rendered the claimant completely disabled and unable to perform any job.

2. On May 23, 1974, Dr. Donald S. Miller, a Board-certified orthopedist concluded that the claimant had a mild disability, but could "do light work in a sitting capacity, if not too laborious."

On June 17, 1976, Dr. Kenneth T. Hubbard, another Board-certified orthopedist, noted limitations on movement and pain in the lower back, but reported that the claimant could perform light or sedentary work.

The opinion of an examining physician that the claimant is totally disabled, though phrased as an ultimate conclusion on the question presented to the Secretary, is entitled to consideration as an indication of how severe the patient's impairment was at the time of the examination. *Hall v. Celebrezze*, 314 F.2d 686 (6th Cir., 1963); *Massey v. Celebrezze*, 241 F.Supp. 59 (E.D.Ky., 1963). Where there is no dispute as to the existence of a physical or mental impairment, such an opinion, standing alone, may establish total incapacity for substantial gainful employment within the meaning of section 423. See *Hassler v. Weinberger*, 502 F.2d 172 (7th Cir., 1974). *Allen v. Weinberger*, 552 F.2d 781 (7th Cir., 1977).

We further observe that even the physicians appointed by the Secretary to conduct supplementary examinations recognized medical problems which prohibited a return to the plaintiff's previous employment. Even if their prognoses are to be accorded an additional degree of weight as expert opinions, they cannot alone tip the scales against the plaintiff and constitute a substantial refutation of his claim of disability, for they merely corroborate his inability for heavy labor.

■ At this point the plaintiff has demonstrated the requisite impairment which prevents his former work and the burden of proof shifts to the Secretary to prove that there is some other kind of substantial gainful employment which he could perform. *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir., 1975); *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir., 1974). Both of the medical experts consulted by the Secretary mention the possibility of light sedentary work, but they do not elaborate fur-

ther on that vague suggestion. The task of demonstrating that alternative employment possibilities exist is routinely assigned to a vocational counselling expert under contract to the Department of Health, Education and Welfare. In this case, two vocational opinions were filed, one by a Vocational Assessment Specialist with the Illinois Federal Disability Program and the other by a counsellor actually present at the hearing. The Vocational Assessment Specialist prepared only a written report on the basis of a file given to him for inspection, and thus he had no first-hand knowledge of the claimant. As invariably occurs in such reports compiled from second-hand information, where there is a medical indication that light or sedentary activity might be possible, the expert delves into that ultimate of job catalogs, the Dictionary of Occupational Titles, and cites two or three esoteric and improbable occupations as likely avenues toward new vocational horizons.[3]

■ The vocational counsellor who appeared and testified at the hearing itself was provided with the same file prior to his appearance but he also had an opportunity during the course of the hearing to observe the demeanor of the claimant. All of his answers at the hearing were made in response to hypothetical questions posed by the administrative law judge after he had provided some elementary definitions about the nature and demands of "light employment" and "sedentary employment." After this introductory examination the ultimate hypothetical question was introduced:

> ALJ: I'd like you to assume for the next area of questioning, the same hypothetical facts, same vocational background, the same age, the same educational background, also the same matter of a

---

**3.** These written suggestions taken from the third edition (1966) of the *Dictionary of Occupational Titles* included Blade Balancer (agricultural equipment) 701.887, Shadowgraph-Weight Operator (sports equipment) 224.887, and Sole Scraper (boot and shoe) 788.887. The report also states that 5,935 were employed in the boot and shoe industry in Illinois in 1972. [In the revised 1977 edition of the *Dictionary* the Scraper description is re-numbered as 788.-687–106].

The Court was particularly fascinated to observe that the job of sole scraper was especially recommended, for this is not the first time that stimulating occupation has been suggested in reports which we have reviewed. The record is totally void of any evidence that such positions currently exist in Illinois, if indeed they ever did. The record is also totally void of any evidence that an employer in the shoe industry would offer such a position to an applicant with the disability of the plaintiff.

[sic] incurring injury which has resulted in constant low back pain, apparently also the person suffers some type of degenerative back condition, also. Also, assume the matter of virtually no vision in the right eye but good corrected vision in the left eye, that I find that he is not able to return to his prior work of inspecting and that I also find that his pain is constant and severe so that he is only able to sit for a period of let's say 15 or 20 minutes at a time and that at that point he has to get up and move around again, standing for any extended time would be impossible for him, and ask you if there's any type of work in any classification for that type of person to be vocationally suited to handle.

Counsellor: It's my opinion that there is not. That under those circumstances he would require either sheltered working conditions or sympathetic employer which essentially means that it is not substantial gainful employment. (emphasis supplied) Tr. pp. 60–61.

In the light of this answer by the counsellor at the hearing the finding of the administrative law judge that the claimant was not under a disability which would prevent him from engaging in substantial work activity, is not only unsupported by the evidence, but it is a manifest distortion of the testimony of the Secretary's own witness.[4] There is no substantial evidence in the record as a whole to support the denial of benefits.

4. In *Shemanski v. Mathews*, 423 F.Supp. 64 (D.Del.1976) the Court granted summary judgment in favor of the plaintiff after an administrative law judge similarly disregarded a vocational specialist's testimony that a claimant could not practically resume work activity and denied disability benefits.

5. 42 U.S.C. § 423(d) provides:
   (d)(1) The term "disability" means—
   (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .
   (2) For purposes of paragraph (1)(A)—

■ We are cognizant that many courts give a literal reading to the language of 223(d) of the Act, 42 U.S.C. § 423(d) [5] and do not require either any showing by the government that any appropriate job exists which would be suitable for a claimant in his own locality or that there be any vacancies for which he might conceivably qualify. This court cannot subscribe to such a rigid view which deals only with theoretical abstractions and ignores the realistic impact which such decisions have on individual claimants in quite specific locations. We adopt that common-sense interpretation so cogently stated by Judge Sobeloff:

The standard which emerges from these decisions in our circuit and elsewhere is a practical one: whether there is a reasonably firm basis for thinking that this particular claimant can obtain a job within a reasonably circumscribed labor market. While we have condemned exclusive reliance upon the Dictionary of Occupational Titles and similar publications, we have indicated that these manuals are useful tools in opening up, by way of suggestion, an assortment of possible job titles to which the claimant may be suited. They may serve as the beginning, but not the end, of the inquiry. There must be a further showing as to which of these occupations are in fact available to a person with the claimant's specific characteristics and impairments. Arm-chair speculation, even by vocational experts, is

   (A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. *(Emphasis supplied).*

insufficient in the absence of any evidence that employers in the area have hired persons with the claimant's limitations or would be willing to do so. Theoretical expertise untarnished by any field investigations is not enough. While we do not require the Secretary to take the claimant by the hand and lead him to a specific job, the statute is not satisfied without a factual showing of job availability for persons of his limited capacity. True, the Act does not entitle a claimant to benefits if work is unavailable because of depressed economic conditions; yet if, as a practical matter, employers would not hire him because of his age, physical impairments and lack of education, he does not lose his benefits merely because even able bodied persons can find no work in the area.

Requiring a common-sense judgment as to the practical employability of an impaired person is a far cry from converting the Social Security Act into an unemployment compensation law. Just as we reject rigid and abstract standards of physical capability which disregard the fact that a person with the claimant's impairments might not be considered for any substantial employment, so we do not lay down a rule favoring claimants whose capacities, though impaired, enable them to engage in gainful work but who have not made a good faith endeavor to secure work that is available and within their capacities. A man is required to act to help himself in whatever way it is reasonable to expect of a man in his circumstances. An employer hires the whole man, not a separate back, hand or eye, and if the claimant is so afflicted as to put any job beyond his reach, he is entitled to benefits if he meets the other requirements of the statute. In all cases there should be a realistic exploration of the totality of the surrounding circumstances.

Gardner v. Earnest, 371 F.2d 606, 609–10 (4th Cir., 1967).

In support of this same view see Kerner v. Flemming, 283 F.2d 916 (2d Cir., 1960); Baker v. Gardner, 362 F.2d 864 (3d Cir.,

1966); Hodgson v. Celebrezze, 357 F.2d 750 (3rd Cir., 1966); Gardner v. Smith, 368 F.2d 77 (5th Cir., 1966); Marion v. Gardner, 359 F.2d 175 (8th Cir., 1966); Celebrezze v. Warren, 339 F.2d 833 (10th Cir., 1964). See also Kelley v. Weinberger, 391 F.Supp. 1337 (N.D.Ind., 1974) and Webb v. Weinberger, 371 F.Supp. 793 (N.D.Ind., 1974). Despite these and numerous other instances in which the Secretary's intangible speculations have been rejected as definitive evidence, the parade of vocational experts with lists of capsule job descriptions has not diminished. Such surmise does not persuade this Court on the issue of vocational alternatives.

We fully recognize that in making his determination the Secretary must consider four elements and their interrelations: (1) objective medical facts or clinical findings, (2) diagnosis of examining physicians, (3) subjective evidence of pain and disability as testified to by the claimant and as observed by others; and (4) the claimant's age, education and work history. Rayborn v. Weinberger, 398 F.Supp. 1303, 1308 (N.D. Ind., 1975). Normally, where experts disagree in their opinions of the claimant's impairment, the Secretary, not the courts, should resolve any conflict. Hassler v. Weinberger, 502 F.2d 172, 177 (7th Cir., 1974); Cyrus v. Celebrezze, 431 F.2d 192, 195 (4th Cir., 1974).

In conclusion, it is the finding of this Court after review of the entire record, that in none of these elements is the decision of the Secretary supported by substantial evidence. Therefore, we deny the motion of the defendant for summary judgment, grant summary judgment in favor of the plaintiff, and accordingly reverse the judgment of the Appeals Council and remand the case to the Secretary of Health, Education and Welfare with directions to provide the plaintiff with the disability insurance benefits claimed.