Vivian MORRIS, Plaintiff,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant.

No. 83 C 1441.

United States District Court, N.D. Illinois, E.D.

Dec. 2, 1983.

Christine M. Naper, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., Mary Anne Mason, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Vivian Morris ("Morris") has sued for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying Morris supplemental security income ("SSI") benefits. Morris initially sought SSI benefits because of her disability as provided by Social Security Act ("Act") § 1602, 42 U.S.C. § 1381a. On June 30, 1982 Administrative Law Judge Kenneth Stewart (the "ALJ") denied Morris' application. Morris then exhausted her administrative remedies in proper sequence (a process that resulted in the ALJ's decision becoming the Secretary's) and brought this action against Secretary pursuant to Act § 205(g), 42 U.S.C. § 405(g).

As is customary in these actions, which come to this Court on the administrative record and a Secretary's decision, the parties have filed cross-motions for summary judgment. In this case the ALJ's decision (which became Secretary's) rested on his finding that although Morris can no longer perform her most recent job, she could still engage in substantial gainful activity in the economy. That finding relied solely on the testimony of Vocational Expert Thomas Grzesik ("Grzesik"). Morris contends the ALJ's decision should be set aside because Grzesik's testimony did not constitute "substantial evidence" in two respects:

1. That testimony did not establish jobs through which Morris could engage in substantial gainful activity actually exist in the economy and are realistically available to Morris.

2. Grzesik did not consider all of Morris' disabilities in offering his opinion Morris could still engage in substantial gainful activity.

Because Morris' first contention is meritorious, she is entitled to summary judgment and a reversal of Secretary's decision. Though consideration of the second issue is therefore not essential to this decision, this Court will discuss it briefly as well.

## Facts

Morris was 54 at the time of the February 17, 1982 ALJ hearing. She has a ninth grade education. Before 1972 Morris worked six years cooking and cleaning at two different restaurants. During that time Morris was required to stand most of the day and lift restaurant equipment (such as pans and trays) weighing up to 50 pounds. From 1972 to 1977, working with her husband, she owned and operated Vivian's Barbecue in Chicago.[1] At Vivian's Barbecue Morris cooked and served zero to 25 dinners per day,[2] prepared and served sandwiches to go, cleaned the restaurant and sold candy. She ordered supplies but hired a woman to do the bookkeeping for the restaurant.

In 1977 Morris sold the restaurant because she could no longer get around due to complications arising from a 1975 accident in which she broke her leg. Morris has a history of bone fractures. She fell and broke her right ankle in 1965, bones in her right leg in 1967, her right ankle in 1975 and her right ankle and her right wrist in 1981. As the ALJ found, that history of fractures, the resulting limitation on Morris' motion and the pain constitute an impairment preventing Morris from performing her past work and limiting Morris to performance of sedentary work.

Morris also claims three other impairments, but the ALJ rejected the significance of those claims:

1. Morris complains of pain and numbness in her right hand and wrist, a tendency to drop things and pain caused by contact with water, paper or metal. Doctors report slightly impaired wrist flexion, weakness of her wrist muscle and trembling associated with writing.[3]

2. Morris claims a history of psychiatric treatment, including 19 days of inpatient care at Bethany Hospital in 1981. One psychiatrist noted Morris' complaint of "battered wife syndrome" (R. 202). Another reported Morris "relates feeling bumps all over her body and other perceptual distortions" and diagnosed Morris as having a "somatization disorder" (R. 199).

3. Morris reported 25 years of alcohol abuse, which on one occasion led to a suicide attempt. She now claims she has stopped drinking.

Morris testified at the February 17, 1982 ALJ hearing, where she was represented by a senior law student. She testified at length about her leg and arm impairments (as well as a vision impairment not asserted here) but did not volunteer any other impairments when asked by the ALJ. Morris' legal representative asked that the record be kept open to allow the submission of psychiatric and medical records, and the ALJ promised to seek additional testimony from Grzesik if those submissions warranted it.

Grzesik testified Morris' basic skills employed in her pre-1972 work are not transferable to sedentary positions. But he said Morris' position as a restaurant operator was classified as a skilled position and involved skills transferable to skilled sedentary jobs in the restaurant business. Such

---

**1.** Vivian's Barbecue had no other kitchen or serving help.

**2.** There were just two tables (with four chairs each) and a counter (with nine or fewer stools) in the restaurant.

**3.** Finding of Fact 8 (R. 23) states:

The level of work the claimant can do is not significantly affected by the non-exertional impairment imposed by the right wrist.

Other claims however were rejected by the ALJ altogether as indicated in Finding of Fact 4 (R. 22):

The claimant has no other, "severe" impairment.

assertedly transferable skills include determining amounts of food to be used during catering, taking phone orders and scheduling catering services. Grzesik said the Palmer House, Conrad Hilton, Blackhawk Restaurant and Marquette Inn employed persons to do such work. When asked by the ALJ if Morris could do such work if she had limited use of her dominant hand but could make occasional notations, Grzesik responded she could.[4]

### Availability of Substantial Gainful Activity

Secretary's decision denying benefits to a claimant will be reversed if it is not supported by "substantial evidence based on the record as a whole." *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); *Tucker v. Schweiker*, 689 F.2d 777, 779 (8th Cir.1982). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting from *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

■ It is undisputed if Morris is "disabled" she is entitled to SSI benefits. See 42 U.S.C. §§ 1381a, 1382(a)(1), 1382c(a)(1). At issue here is the ALJ's finding Morris is not disabled under 42 U.S.C. § 1382c(a)(3), which provides in pertinent part:

(A) An individual shall be considered to be disabled for purposes of this title if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ....

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

It also is undisputed Morris cannot continue her previous work. Rather Morris contests the ALJ's conclusion Morris can engage in some "other kind of substantial gainful work which exists in the national economy." [5]

For SSI purposes the burden rests initially with the claimant to show inability to do previous work. If the requisite showing is made, as the parties agree was done here, the burden shifts to Secretary to show an alternative substantial gainful employment suitable to the claimant. *Tucker*, 689 F.2d at 779–80; *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir.1980).[6]

---

4. When asked if Morris could perform the work if the mere holding of a pencil caused pain (a possibility the ALJ ultimately did not accept), Grzesik responded (R. 95):

   It would—
   In an extremely significant amount of instances preclude her from performing the job.

5. As is entirely proper (*Cummins v. Schweiker*, 670 F.2d 81, 83 (7th Cir.1982)), the ALJ's conclusion was based not only on the statute but also on 20 C.F.R. Subpart P, App. 2, Table 1 ("Table 1"), which directs decisions about the determination of disability. Because Morris at the time

of the hearing was closely approaching advanced age, had limited education, and performed skilled or semi-skilled work, Rule 201.10 of Table 1 provides she is disabled if her skills are not transferable and Rule 201.11 of Table 1 provides she is not disabled if her skills are transferable.

6. *Tucker*, an Eighth Circuit opinion, deals with 42 U.S.C. § 1382c, at issue here, while our Court of Appeals' decision in *McNeil* concerns very similar language in 42 U.S.C. § 423, which pertains to disability insurance. Though courts sometimes interpret similar language different-

It is frankly absurd to consider Grzesik's testimony as meeting that burden. In the abstract Grzesik's testimony applying restaurant-operating skills to sedentary positions is of course reasonable. Applying that concept to Morris under the circumstances, however, is nonsensical. Justice may be depicted as blind—but it is not totally senseless.

Grzesik's testimony recognized the hypothetical work he described exists only at large restaurants and hotels—the Palmer House and Conrad Hilton hotels, Blackhawk Restaurant, Marquette Inn. He accepted by hypothesis Morris could neither supervise catering and serving at the scene nor compose extensive written proposals. Secretary's effort to bolster Grzesik's testimony before this Court places the work he described into one of two categories:

1. work as a "resource person" (Def. Mem. 6) who is consulted orally for her expertise but has no supervisory responsibilities;

2. work as a manager, with sufficient support personnel to overcome her lack of mobility or use of her hands for prolonged periods of time.

■ No substantial evidence supports the existence of *any* job in the first purported category or the availability to Morris of *any* job in the second. Instead Secretary's position is based on the rankest and most implausible speculation. Morris points out no entry in the Department of Labor's Dictionary of Occupational Titles (4th ed. 1977) describes work falling in the first category.[7] As for the second, it is bizarre in the extreme to think Morris could obtain work as manager of a large food service, limited as she is by her ninth grade education, lack of experience in any such operation[8] and restricted mobility.

This determination of course involves no infringement upon the directive of 42 U.S.C. § 1382c(a)(3)(B), which requires the determination of disabled status to be made "regardless of ... whether [Morris] would be hired if [she] applied for work." This Court has in no way opined on whether Morris would in fact be hired, but rather on whether she "can[ ] ... engage in" the proposed alternative work. On that score the perceptive opinion of former Judge Crowley of this District Court bears repeating (*Atkins v. Califano,* 446 F.Supp. 1017, 1022–23 (N.D.Ill.1978)):

> We are cognizant that many courts give a literal reading to the language of 223(d) of the Act, 42 U.S.C. § 423(d)[9] and do not require either any showing by the government that any appropriate job exists which would be suitable for a claimant in his own locality or that there be any vacancies for which he might conceivably qualify. This Court cannot subscribe to such a rigid view which deals only with theoretical abstractions and ignores the realistic impact which such decisions have on individual claimants in quite specific locations. We adopt that common-sense interpretation so cogently stated by Judge Sobeloff:
>
> > The standard which emerges from these decisions in our circuit and elsewhere is a practical one: whether there is a reasonably firm basis for thinking that this *particular* claimant

ly, this is not the occasion to do so. Not only are reported cases on the sections in agreement, but our Court of Appeals recently decided a case involving both sections without making any distinction in their analysis. *Cannon v. Harris,* 651 F.2d 513 (7th Cir.1982) (per curiam).

7. That Dictionary's entry for "Caterer, Helper" is closest to the work described by Grzesik, but it is not in conformity with the testimony here because it includes the preparation and serving of food.

8. Vivian's Restaurant was the literal prototype of the "mom and pop" operation. It is needless to rehearse all the contrasts between the realities of Morris' experience and the sophisticated business world into which Grzesik would seek to translate that experience. Although one swallow does not a summer make, off this performance Grzesik casts serious doubt on the second half of his "Vocational Expert" label. Perhaps the Dictionary of Occupational Titles could shed some additional light on that subject.

9. [Footnote by this Court substituted for footnote by Judge Crowley] 42 U.S.C. § 423(d) in pertinent part reads the same as 42 U.S.C. § 1382c(a)(3). See n. 5.

can obtain a job within a reasonably circumscribed labor market. While we have condemned exclusive reliance upon the Dictionary of Occupational Titles and similar publications, we have indicated that these manuals are useful tools in opening up, by way of suggestion, an assortment of possible job titles to which the·claimant may be suited. They may serve as the beginning, but not the end, of the inquiry. There must be a further showing as to which of these· occupations are *in fact* available to a person with the claimant's specific characteristics and impairments. Arm-chair speculation, even by vocational experts, is insufficient in the absence of any evidence that employers in the area have hired persons with the claimant's limitations or would be willing to do so. Theoretical expertise untarnished by any field investigations is not enough. While we do not require the Secretary to take the claimant by the hand and lead him to a specific job, the statute is not satisfied without a *factual* showing of job· availability for persons of his limited capacity. True, the Act does not entitle a claimant to benefits if work is unavailable because of depressed economic conditions; yet if, as a practical matter, employers would not hire him because of his age, physical impairments and lack of education, he does not lose his benefits merely because even able bodied persons can find no work in the area.

Requiring a common-sense judgment as to the practical employability of an impaired person is a far cry from converting the Social Security Act into an employment compensation law. Just as we reject rigid and abstract standards of physical capability which disregard the fact that a person with the claimant's impairments might not be considered for any substantial employment, so we do not lay down a rule favoring claimants whose capacities, though impaired, enable them to engage in gainful work but who have not made a good faith endeavor to secure work that is available and within their capacities. A man is required to act to help himself in whatever way it is reasonable to expect of a man in his circumstances. An employer hires the whole man, not a separate back, hand or eye, and if the claimant is so afflicted as to put any job beyond his reach, he is entitled to benefits if he meets the other requirements of the statute. In all cases there should be a realistic exploration of the totality of the surrounding circumstances.

*Gardner v. Earnest,* 371 F.2d 606, 609–10 (4th Cir.1967).

In this case Grzesik did not offer any plausible basis for determining Morris could actually engage in the work Grzesik described. Indeed the ALJ did not specifically so determine, but if he had it would not have been a decision grounded in "substantial evidence." Secretary's decision, predicated as it was wholly on the ALJ's decision, must be reversed.

### Failure To Consider All Disabilities

Although the prior section is dispositive of this action, the possibility of an appeal of this decision makes it appropriate to discuss briefly Morris' second ground for reversing the administration's decision. She points out the hypothetical question put to Grzesik during the ALJ hearing was based only on the assumption Morris is limited to sedentary work and cannot write except to jot occasional notes. Morris therefore contends Grzesik's testimony is defective and cannot constitute substantial evidence. That argument is based on the facts that during the hearing Morris had also alleged impairments caused by psychological problems and that (as she now argues) such problems are a possible explanation of the limited use of her right hand.[10]

---

**10.** In addition the ALJ's opinion mentioned the evidence of past alcohol abuse, but because Morris claimed to have stopped drinking there is no evidence that condition was even a factor at the time of the hearing.

While *Cannon,* 651 F.2d at 519 does teach the ALJ must consider and explore all relevant grounds for benefits, neither that case nor other authority requires the final decision actually be based on those grounds. Here the ALJ did consider and partially credited Morris' testimony about the limitations on (and pain associated with) the use of her right hand. He asked Morris if she would like to discuss any other impairments, and (except for discussing her poor eyesight) she declined. Her legal representative volunteered to provide medical records including psychiatric reports, and the ALJ promised to recall Grzesik if he thought those reports warranted additional expert testimony.

Morris might have elected to testify regarding her psychological problems, but absence of that testimony is not critical to the case. She did not volunteer her history of psychiatric treatment as evidence of an impairment justifying benefits, and that is her right.[11] Psychiatric evidence was discussed by her legal representative at the close of the hearing, and the ALJ's opinion indicates he considered that issue.

Introduction of evidence along those lines could only have buttressed Morris' position. And as this opinion has already held, Secretary failed to meet her burden on the record as actually developed, so the absence of further evidence supporting Morris is irrelevant.

### Conclusion

There is no substantial evidence to support the proposition Morris can engage in substantial gainful activity. There are no genuine issues of material fact, and Morris is entitled to a judgment as a matter of law. Accordingly Secretary's decision is reversed, and she is ordered to pay Morris the SSI benefits at issue in this action.

11. Morris may have chosen not to seek benefits on the basis of her psychological problems. In group therapy she prefaced some comments by saying she isn't "mental" (R. 203).