Charles CALLESTO, Plaintiff,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Defendant.

No. CIV–78–528.

United States District Court,
W.D. New York.

June 5, 1984.

Joseph M. Broderick, Buffalo, N.Y., for plaintiff.

Kathleen M. Mehltretter, Asst. U.S. Atty., Buffalo, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff a 57-year old man with an eighth-grade education, a 26-year history of bartending and of two failed attempts to own and operate a liquor store, and classified as totally disabled by the Veterans' Administration in 1976, filed an application February 18, 1977 for disability insurance benefits under the Social Security Act. He claimed to have been disabled since April 1975 due to arthritis, arteriosclerosis, diabetes and foot and sinus conditions. His application was denied June 19, 1977 and, upon reconsideration, was denied again September 26, 1977. A hearing was requested and was held before an Administrative Law Judge ("the ALJ") December 12, 1977. In a decision dated February 17, 1978 the ALJ concluded that plaintiff was not disabled and hence not entitled to disability benefits. The Social Security Administration Appeals Council affirmed the ALJ's decision June 23, 1978, and plaintiff commenced this action to obtain review of the agency's findings. On January 16, 1981 I issued a Memorandum and Order denying a motion by defendant for summary judgment, on the grounds that the ALJ had stated no factual basis for his conclusion that, although plaintiff could not work as a bartender—his former occupation—, plaintiff's impairments did not "prevent him 'from engaging in *some* of his former work activity (*such as supervising bartender or liquor store owner)*'" (Memorandum and Order at 4), such being other previous employments of plaintiff. The case was remanded to defendant for consideration "whether plaintiff's inability to perform extensive lifting, standing and walking prevented plaintiff from working as a head bartender or liquor store operator during or prior to March 1975" and, if the evidence revealed plaintiff to have been incapable of such employment at such time, to determine whether "plaintiff could engage in alternative substantial gainful employment." *Id.*, at 5.

An initial hearing was held upon remand, in the course of which plaintiff testified that in his last employment ending in March, 1975 he had worked only part time, about three or four hours daily, because of his physical limitations. (Record ["R"] 196–197.) Plaintiff testified that he had wished to leave his job six months before he finally did, but stayed on because his employer had asked him to do so until he could be suitably replaced, the employer offering to do "all the heavy work" for plaintiff in the interim. (R. 226.) This representation is corroborated by two letters of record from his then employer. The first, dated December 8, 1977, indicates that plaintiff had been employed from about June 1974 until about February 1975, had asked to leave work in January 1975 due to trouble with his feet, legs and back, and had been asked to remain temporarily to avoid causing "a strain on the business." (R 106.) The second letter, R 402, is dated November 15, 1978 and indicates that during plaintiff's employment his employer found it necessary to relieve plaintiff at various times so that he could rest, due to back and foot pain, and necessary also "to stock the bar with bottled beverages due to the fact that [plaintiff] could not lift or bend without suffering pain."

Plaintiff also had testified at the initial hearing as to his inability in his last employment to bend or stoop or pick up items weighing more than ten pounds, due to pain in his hands, wrists, legs and back,

and to shortness of breath. (R 198–199, 236, 242–245.) He estimated his physical abilities as of March 1975 as able, during an eight-hour day, to stand one and a half hours at a time, sit for ten-minute periods relieved by brief periods of standing and walking, walk only about one block, bend or stoop very little, and lift about eight or ten pounds. (R 239–245.)

A vocational expert testifying at the initial hearing on remand testified that a person with plaintiff's disabilities as testified to by plaintiff could not return to his work as a bartender. (R 272.) The expert was then posed the hypothetical question whether, with plaintiff's self-described disabilities, he would be able to perform "supervisory" bartender work—"light" work, according to the expert—and again opined that he could not.

The medical evidence of record pertinent to plaintiff's complaints of disabling pain indicates that in September 1976 plaintiff was examined by an orthopedic doctor, Dr. C, who after examining x-ray reports found among other things that plaintiff had moderate osteoarthritis of the lower lumbar vertebrae, an osteiitis involving the sacroiliac joint, a minimal degree of osteiitis condensan ilii bilaterally, a minimal degree of eburnation and sclerosis of the superior acetabulum, and a marked arteriosclerosis of the abdominal aorta. Plaintiff had complained to Dr. C of back pain "which he has had for a good many years," and aching pain in his ankles, the outer side of each leg and in his fingers and wrists. (R 103.) An x-ray of plaintiff's lumbosacral spine performed at the Veterans' Administration Hospital in November 1977 was found to reveal "osteophytic overgrowth * * * in L–4 and L–5 vertebral bodies anteriorly and laterally." (R 374.) X-rays taken at another hospital in July 1977 were seen as revealing "minimal degenerative arthrosis" of the lumbar spine and the hip joints. (R 96.) Radiology performed in April 1976 by Dr. B was viewed as showing the lumbar spine to be "WNL"—probably meaning "within normal limits." (R 394.)

Plaintiff also suffers from a long-standing condition of bilateral pes planus—two flat feet—which has evidently given him considerable pain and difficulty over the years, possibly contributing to plaintiff's experience of leg and back pain. (See R 378–401.) There is the additional problem of plaintiff's pre-March 1975 experience of chest pain, but this was not suggested as disabling plaintiff at that time or contributing to his disability until after plaintiff had had a cardiac bypass operation in 1979.

Based upon this record the ALJ initially found that plaintiff's report of disabling pain was not credible, and that he was therefore able to return to his former employment. In order to reject a disability claimant's subjective testimony of disabling pain, where as here there exists an "medically ascertainable source" for such pain *see Gallagher on behalf of Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir.1983), the ALJ is required to weigh "the objective medical evidence in the record, appellant's demeanor, and other indicia of credibility," if the decision under review is to be deemed to be supported by substantial evidence. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). The ALJ found that plaintiff's credibility was negated by his correction of his initial report of the date when he became disabled—April 1, 1975, to March 25, 1975—after discovering that he met the earnings requirement for disability insurance purposes only through March 31, 1975, by plaintiff's retraction of a statement signed by himself representing that he had worked part time until 1977, and also by plaintiff's apparent failure to seek medical help for his assertedly painful conditions other than his podiatric problems prior to 1976. (R 156.)

The Social Security Appeals Council subsequently remanded plaintiff's case to the ALJ for further inquiry whether plaintiff suffered from a disabling heart condition as of March 31, 1975, and for further development of vocational expert testimony. (R 148–149.) In a second hearing the testimony of a cardiologist was taken, to the effect that although plaintiff had had to have cardiac bypass surgery in 1979 it was not likely that the plaintiff's 1973 and 1974 experiences of chest pain were heart at-

tacks, but were probably episodes of angina pectoris. A vocational expert was posed six hypothetical questions based upon various possible findings as to plaintiff's physical capabilities. In response to a hypothetical question approximating plaintiff's view as to his abilities in 1975, the vocational expert testified that with such limitations he could not return to his former employment as bartender, supervisory bartender ("light" work in this expert's opinion (R 334)), or liquor store operator. (R 340–341.) Based upon this hearing the ALJ again found plaintiff not to have been disabled as of March 1975, adducing in support of his rejection of plaintiff's testimony as to his physical limitations and pain as of March 1975 the additional factors that "claimant had no problem sitting" during the two hearings on remand, which lasted approximately 2 hours (March 18) and an hour and a half (August 25), and to Dr. B's April 1976 x-ray report showing plaintiff's lumbosacral spine to be "WNL," within normal limits. (R 133.)

■ Having carefully reviewed the entire record, I have concluded that the ALJ failed to adduce any rational basis for rejecting plaintiff's testimony as to his experience of disabling pain, despite his two considerations of the case. The first ALJ opinion on remand emphasized "contradictions between [plaintiff's] signed statements and his oral testimony." (R 156.) No such contradictions actually exist. At pages 215 and 216 of the record it appears that in the first hearing on remand the ALJ had confronted plaintiff with the fact that in February 1977 he had signed a statement indicating that he had worked part time from 1971 to 1977 as a bartender, whereas he testified that he had been unable to work at all after March 1975. Plaintiff explained that the representation that he had worked after 1975 was merely an error, observing "sometimes I have an error, mistakes." (R 216.) Examination of the statement, in the record at pages 73 to 78, suggests that it was made out in plaintiff's own hand-writing, several samples of which appear in the record. Not noticed by the ALJ, apparently, are the marginal notation, on the same page as appears the

erroneous statement, that plaintiff worked "part time until 1975" and the indication on page 3 of the statement that he worked in his last period of employment from 1971 to April 1975. It is obvious that plaintiff merely erred in representing on the first page of the statement that he had worked part time from 1971 to 1977, and cannot reasonably have his credibility impugned for such error.

■ Another "inconsistency" inquired into by the ALJ in the first hearing on remand (R 217–219) is that in his initial application for benefits plaintiff had indicated that his illness finally prevented him from working "4–1–75" (R 73), whereas after discovering that he would be eligible for disability insurance benefits only if he were unable to work as of March 31, 1975, plaintiff had changed his disability date to March 25, 1975. In making this change plaintiff had stated that he had used the April 1st date "for the convenience of using a 'round' figure," whereas he had actually stopped working "at the end of March, 1975. It was probably 3/25/75." (R 81.)

The ALJ placed undue emphasis upon this picayune discrepancy, particularly in view of the uncontradicted statement from plaintiff's employer, noted *supra*, that he desired to leave work well before his actual departure, but stayed on only at the employer's urging and with physical assistance from the employer. Employment continued under such circumstances cannot constitute evidence of ability to work, absent additional evidence that the claimant was actually able to perform duties inconsistent with disability. *See, e.g., Stark v. Weinberger*, 497 F.2d 1092, 1100 (7th Cir. 1974); *Jackson v. Schweiker*, CIV-80–988 (W.D.N.Y. February 10, 1982). It is altogether likely that nearly a year after leaving employment anyone, particularly one of undemanding mental habits such as plaintiff, would "round off" his disability date to the first day of the next month, rather than state it as the 25th day of the month in which he actually stopped working; and, in any case, plaintiff is upon the evidence

entitled to an earlier onset date than claimed, as explained above.

█ The ALJ also confronted plaintiff, in the second hearing on remand, with an inconsistency between a statement by plaintiff made in 1977, that after walking "for a quarter of a mile or so, I get cramps in my calves, I must rest or rub them," and plaintiff's hearing testimony that he couldn't walk more than a block. (R 310–313.) The ALJ's rejection of plaintiff's explanation, that he was not being precise when he estimated a quarter of a mile in the written statement, is simply unreasoning. If the fundamental truthfulness of anyone and everyone could be drawn into question upon minute inconsistencies such as those seized upon by the ALJ in plaintiff's case, social and economic interaction would doubtlessly suffer paralysis.

█ The ALJ's observation that the plaintiff "had no trouble sitting" through both lengthy hearings on remand, being the observation of a lay person, is entitled to little weight on the issue of credibility. *E.g., Carrol v. Secretary of Health and Human Services*, 705 F.2d 638, 643 (2d Cir.1983). It is utterly inappropriate to deduce from a disability claimant's discomfort or lack thereof during a hearing, even one lasting as long as two hours, that which she or he would feel in the course of an eight-hour day, working day after day. Many distorting factors other than the lack of duration over time can be adduced. Moreover, in this case, contrary to the ALJ's assertion, the plaintiff did actually find it necessary to ask to be allowed "to stand for a minute" about halfway through the first hearing (R 235), which saps some strength from the ALJ's finding on the issue of credibility. *Cf., Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir.1981) (ALJ's rejection of testimony as to pain based on hearing demeanors was "contradicted by the ALJ's comment at the hearing that Mr. Aubeuf was 'sitting on one side.' ").

█ The ALJ also found plaintiff's credibility questionable due to plaintiff's supposed failure to seek medical help for his condition before he stopped working. How-ever, plaintiff indicated that he was taking aspirin on his own initiative during that time (R 235), which "helped a little" (R 262). Furthermore, a decision on plaintiff's application for disability benefits by the Board of Veterans Appeals, dated December 26, 1974 and set out in the record at pp. 364–370, clearly indicates that at that time plaintiff suffered from his painful flat feet, leg cramps, and from lower back ache "which he felt was a direct result of his flat feet" (R 367.) It is reasonable to conclude that plaintiff had hoped that the continued professional attention to his flat feet which he pursued at this time would lead to alleviation of the other musculoskeletal problems as well. Nothing about plaintiff's manner of attending to his medical problems during the period when he worked reasonably suggests that such problems did not exist.

Finally, the ALJ pointed to Dr. B's negative radiology report regarding plaintiff's lumbosacral area in derogation of plaintiff's testimony as to his experience of pain. That the ALJ plucked Dr. B's x-ray findings from among several roughly contemporaneous contradictory x-ray findings that showed minimal to moderate arthritic changes says everything needful about the use to which it was put.

It is to be noted that, rather than being undermined by anything adduced by the ALJ, plaintiff's credibility is bolstered by his extended history of steady employment and commercial enterprise (*see, e.g., Clifton v. Secretary of Dept. of H.E.W.*, 505 F.Supp. 614, 616 (W.D.N.Y.1980)), by his minimal daily activities, stated in the record at pp. 246 to 248 (*see, e.g., Aubeuf v. Schweiker, supra*, at 113–114), and to some extent by the natural incentive to care for his two dependent children (see record at 188, 189).

█ In the absence of any rational basis for disbelieving plaintiff's description of his physical disabilities and residual capacity, and in the absence also of any legal defect in the proceedings below which, if corrected upon remand, may determine a different result, defendant is bound to follow the

opinions of her own vocational expert witnesses that one in plaintiff's physical, educational and work experience condition as of March, 1975 would be unable to find and hold any job. *See, Aubeuf v. Schweiker, supra,* at 115–116. *Cf., Atkins v. Califano,* 446 F.Supp. 1017, 1022 (N.D.Ill.1978). Here there is no deficiency in the ALJ's questioning of the vocational experts or use of an erroneous standard for evaluating subjective testimony of pain (other than the credibility problem) (see *Aubeuf v. Schweiker, supra,* at 114), or any likelihood that upon remand defendant may wish to move to introduce new evidence (see *Carrol v. Secretary of Health and Human Services, supra,* at 643–644). There is therefore no purpose to be served by remanding this case to defendant other than for the computation of benefits due.

In accord with the foregoing, defendant's motion for summary judgment is hereby ORDERED denied, and summary judgment for plaintiff is hereby ORDERED granted. The case is ORDERED remanded to defendant for the computation of benefits.